Jack RANDELL, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 1097, Docket 94–6220.

United States Court of Appeals,
Second Circuit.

Argued March 13, 1995.

Decided Aug. 28, 1995.

Jared J. Scharf, White Plains, NY, for plaintiff-appellant.

Deborah Y. Yeoh, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Nancy G. Milburn, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for defendant-appellee.

Before: MESKILL, CARDAMONE, and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

This is an appeal in a tax case. Plaintiff Jack Randell brought suit in the United States District Court for the Southern District of New York (Goettel, J.) seeking to enjoin assessment of deficiencies made by the Internal Revenue Service (IRS) based on his distributive share of income from two partnerships. The district court granted summary judgment to the government and plaintiff appeals. We affirm.

## BACKGROUND

### A. *Statutory and Regulatory Framework*

Before laying out the facts of this dispute, it will be helpful to set forth briefly the statutory and regulatory context in which they arise. It is a basic tenet of federal income tax law that partnerships are not taxable entities. I.R.C. § 701 (1988); Treas. Reg. § 1.701–1 (1960). Therefore, rather than file tax returns as individuals and corporations do, partnerships simply file informational returns. I.R.C. § 6031 (1988); Treas. Reg. § 1.6031–1 (as amended in 1978). Although partnerships do not pay federal income tax, each partner is individually liable for income taxes relating to his or her distributive share of partnership income, gain, loss, deduction and credit. I.R.C. §§ 701, 702 (1988 & Supp. IV 1992); Treas.Reg. § 1.702–1(a) (as amended in 1992). Prior to 1982 adjustments of partnership items were determined at the individual partners' level, resulting in duplication of administrative and judicial resources and inconsistent results between partners.

To solve this problem, Congress enacted the Tax Treatment of Partnership Items Act of 1982, as Title IV of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324, 648 (codified as amended at I.R.C. §§ 6221– 6233 (1988 & Supp. IV 1992)), which created a single unified procedure for determining the tax treatment of all partnership items at the partnership level. A "partnership item" is one "more appropriately determined at the partnership level than at the partner level," I.R.C. § 6231(a)(3), and includes "[t]he partnership aggregate and each partner's share of ... [i]tems of income, gain, loss, deduction, or credit of the partnership." Treas.

Reg. § 301.6231(a)(3)–1(a)(1)(i) (1986). A "nonpartnership item" is one that is "not a partnership item," I.R.C. § 6231(a)(4), and is therefore determined at the individual partner's level. As a consequence, assessments for nonpartnership item adjustments are subject to the statutory notice of deficiency procedure. I.R.C. §§ 6212(a) (1988); 6230(a)(2).

■ A partner generally must file an individual income tax return that is consistent with the partnership return. I.R.C. § 6222(a). One example of inconsistent treatment occurs when a partner does not file an individual tax return reporting his distributive share of income as reported by the partnership on a Schedule K–1. A partner disagreeing with the partnership's reporting of his or her distributive share of partnership items has a choice: the partner must either (a) notify the IRS of an election to treat a partnership item inconsistently with the treatment of the item on the partnership return, I.R.C. § 6222(b), or (b) request an administrative adjustment of the partnership item, I.R.C. § 6227(a). In the absence of either notification or request for administrative adjustment, a partner who treats items inconsistently with the partnership's treatment of items may be assessed with a deficiency, without notice, as a computational adjustment. I.R.C. §§ 6222(c), 6230(a)(1). A "computational adjustment" means a "change in the tax liability of a partner which properly reflects the treatment ... of a partnership item." I.R.C. § 6231(a)(6). In other words, the IRS may assess a partner for tax due in order to conform a partner's treatment of an item with the partnership's treatment of that item.

Just as the tax law generally requires individuals to be given notice of an assessed deficiency, TEFRA requires the IRS to notify certain partners when it undertakes an administrative proceeding to adjust a partnership item. I.R.C. § 6223(a). The IRS mails to the "tax matters partner" (generally the general partner designated by the partnership to handle tax matters, I.R.C. § 6231(a)(7)) a final partnership administrative adjustment (FPAA or administrative adjustment), reflecting its determination to ad-

just, and thereafter sends copies of the FPAA to each "notice partner." I.R.C. §§ 6223(a), 6223(b), 6231(a)(8). When a partnership has 100 or more partners, a notice partner is generally one who owns at least a one percent interest in the partnership. I.R.C. § 6223(b)(1).

The tax matters partner may contest the FPAA within 90 days after its mailing by filing a petition for readjustment in Tax Court, the Court of Federal Claims or the appropriate federal district court. I.R.C. § 6226(a). If no such petition is filed, any notice partner may file a petition for readjustment within the next 60 days. I.R.C. § 6226(b)(1). All partners with an interest in the outcome of the proceeding are entitled to participate in an action brought by the tax matters partner or a notice partner, I.R.C. §§ 6226(c), 6226(d), thereby meeting TEFRA's objective of ensuring that all partners may, if they choose, litigate a dispute with the IRS in a single proceeding.

■ After the FPAA adjustments become final or conclusively established (i.e., after they go unchallenged or are judicially resolved in a § 6226 proceeding), the IRS may assess partners with their distributive share of the adjusted partnership items, without notice, as a computational adjustment. I.R.C. §§ 6225, 6230(a). Statutory notice is not required since, under TEFRA, the partnership item has been resolved at the partnership level and cannot be contested at the individual partner level. With this statutory background in hand, we pass to the facts.

### B. Government Arbitrage Trading Company

Plaintiff Randell failed to file an individual tax return for the year 1983. That year he had a 1.572 percent limited partnership interest in the Government Arbitrage Trading Company (GATC), a partnership of more than 100 partners. On its partnership return for that year, GATC reported partnership income of $4,224,972, expenses of $56,475,053, a short-term capital loss of $49,412, and a long-term capital loss of $74,117. GATC issued a Schedule K–1 to Randell for that year reporting his distributive share as an ordinary loss of $821,350, a net short-term capital

loss of $777, and a net long-term capital loss of $1,165. Plaintiff admits receiving a copy of the Schedule K–1 indicating his share of the partnership's ordinary and capital losses.

After auditing the partnership for 1983, the IRS determined that adjustments to GATC's tax return were necessary. The government disallowed GATC's claimed expenses of $56,475,053 and its short-term capital loss of $49,412. These adjustments resulted in an increase in the amount of previously reported partnership income that was taxable. On October 24, 1991 the IRS issued an administrative adjustment to GATC's tax matters partner. In November 1991 the IRS sent copies of the FPAA to GATC's notice partners, including plaintiff. On March 16, 1992 GATC's tax matters partner filed an untimely petition with the United States Tax Court which was dismissed for lack of subject matter jurisdiction. *See Government Arbitrage Trading Co. v. Commissioner,* 67 T.C.M. (CCH) 2551, 1994 WL 102638 (1994) (tax matters partner failed to file petition within 90–day period and was not entitled to file petition as a notice partner within 60 days after the close of the 90–day period because petitioner, owning only a .5 percent interest in partnership profits, did not qualify as a notice partner). No notice partner, including Randell, filed a petition for readjustment.

### C. *Conarbco*

Randell was also a limited partner in Conarbco, a partnership of more than 100 partners, with 1.7992 percent, 1.798 percent and 1.798 percent interests during the years 1985, 1986, and 1987, respectively. Randell failed to file individual tax returns for the years 1985 and 1986, and in April 1990 filed an untimely return for 1987, reporting his distributive share of income from Conarbco.

On its 1985 partnership return Conarbco had reported income of $66,212,174 and expenses of $57,369,574. Its 1986 partnership return showed income of $70,184,748, expenses of $61,587,165, and a net long-term capital loss of $278,023. For 1987 the partnership reported income of $7,789,054, expenses of $9,584,515, a net short-term capital loss of $295,464 and a net long-term capital

loss of $435,257. Conarbco issued Schedules K–1 to Randell, reporting as follows: for 1985 plaintiff had a distributive share of ordinary income of $160,243, dividends of $3,905, a net short-term capital gain of $32,057 and a net long-term capital gain of $2,585; for 1986 plaintiff's distributive share was ordinary income of $155,712, a net short-term capital gain of $33,715, and a net long-term capital loss of $5,002; and for 1987, although Conarbco appears to have had a net loss, plaintiff's distributive share of ordinary income was $29,526. Randell admits receiving copies of these schedules.

Upon auditing Conarbco for the tax years 1985, 1986, and 1987, the IRS determined that certain partnership item adjustments were necessary. The IRS disallowed Conarbco's 1985 claimed expenses of $57,369,-574. For 1986, the IRS disallowed Conarbco's claimed expenses of $61,587,165 and its long-term capital loss of $278,023. The IRS similarly disallowed the partnership's 1987 expenses of $9,584,515, its long-term capital loss of $435,257, and its short-term capital loss of $295,464. These adjustments had the effect in each year of increasing the amount of previously reported partnership income that was taxable. This point bears repeating: while partnership income was not adjusted by the IRS, the act of disallowing deductible expenses resulted in a greater amount of that income becoming taxable.

On August 30, 1991 the IRS issued an administrative adjustment to Conarbco's tax matters partner. In September 1991 the IRS sent copies of the administrative adjustment to Conarbco's notice partners, including Randell. No Conarbco partner filed a petition for a readjustment.

### D. *Assessment Against Randell*

On January 23, 1993, after the GATC and Conarbco partnership item adjustments were finalized, the IRS assessed plaintiff for his distributive share of partnership income. Portions of the original assessment have since been abated due to IRS error. The remaining assessments are for the taxes and interest due on $2,702,411 of unreported income Randell earned from the partnerships. That amount breaks down as follows: $66,-

417 for 1983;[1] $1,229,836 for 1985;[2] $1,295,- 637 for 1986;[3] and $110,521 for 1987.[4] The total tax on this unreported income amounts to about $1.3 million, with interest due of approximately $1.6 million, for a total assessment of roughly $2.9 million.

### E. District Court Proceedings

In June 1993 plaintiff filed a complaint in the Southern District of New York seeking to enjoin the collection of income taxes assessed against him for 1983, 1985, 1986, and 1987 on the ground that he was not served with a statutory notice of deficiency. In December 1993 the parties cross-moved for summary judgment. On April 28, 1994 the district court partially granted the government's motion and denied plaintiff's motion. The district court then granted the parties' cross-motions for reargument and, in a memorandum decision entered July 1, 1994, partially granted each party's motion for summary judgment. After being alerted by the IRS of a factual misstatement in that decision, the district court issued a *nunc pro tunc* order amending its earlier decision so as to grant summary judgment to the government in full. Accordingly, a final judgment was entered dismissing plaintiff's complaint. Randell appeals from that judgment.

### DISCUSSION

■ We review *de novo* the grant of summary judgment. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995). When there are no genuine issues of material fact in dispute, as is the case here, "our task is to determine whether the district court correctly applied the law." *Siskind v. Sperry Retirement Program*, 47 F.3d 498, 503 (2d Cir.1995).

■ The dispute between Randell and the government is properly framed by examining our subject matter jurisdiction. "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941)). The federal government's waiver of its sovereign immunity must be unequivocally expressed, *see United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969), and is to be strictly construed, *see Sherwood*, 312 U.S. at 590, 61 S.Ct. at 771.

■ In the context of tax assessments and collections the government's sovereign immunity has been codified by the Anti-Injunction Act, I.R.C. § 7421(a) (1988), which states: "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." The purpose of the Act is to protect "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962)).

■ Under the Anti-Injunction Act there is a judicially created exception for taxpayers, *see Enochs*, 370 U.S. at 7, 82 S.Ct. at 1129, which Randell argues applies to him. To qualify for this exception a taxpayer must show (1) that "it is clear that under no circumstances could the Government ultimately prevail" on the tax liability and (2) that "equity jurisdiction otherwise exists" because the taxpayer would suffer irreparable injury

---

1. Randell's 1.572% share of GATC's 1983 total income of $4,224,972.

2. The sum of (1) Randell's 1.7992% share of Conarbco's 1985 total income of $66,212,174, which equals $1,191,289, and (2) $38,547 of dividends, short term capital gain and long term capital gain.

3. The sum of (1) Randell's 1.798% share of Conarbco's 1986 total income of $70,184,748, which equals $1,261,922, and (2) $33,715 short term capital gain.

4. Randell's 1.798% share of Conarbco's 1987 total income of $7,789,054, which equals $140,047, less the $29,526 of income from Conarbco reported on plaintiff's 1987 individual tax return.

if collection were effected. *Id.* A court must "take the view of the facts that is most liberal to the Commissioner, not to the taxpayer seeking injunctive relief." *Laino v. United States,* 633 F.2d 626, 632 (2d Cir. 1980). Randell has failed to make the requisite showing.

■ By its own terms, the Anti–Injunction Act also includes an exception for injunction proceedings brought under I.R.C. § 6213(a). That section provides that a taxpayer has certain time periods to challenge a notice of deficiency and that "no assessment of a deficiency in respect of any tax ... and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration" of the appropriate time period. § 6213(a). It continues, "[n]otwithstanding the provisions of [the Anti–Injunction Act], the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court." *Id.* Randell avers, therefore, that the district court had jurisdiction to enjoin the IRS' assessment and collection efforts since he had not received the statutorily required notice of deficiency.

The government's response, with which the district court agreed, was that TEFRA, specifically § 6230(a)(1), makes the mailing of a notice of deficiency and the related prohibition on assessment until notice is mailed inapplicable where the taxes assessed against a partner are computational adjustments to conform that partner's treatment of a partnership item to the treatment of that item by the partnership. Therefore, if the assessment against Randell is a computational adjustment the exception to the Anti–Injunction Act does not apply. In that case, the Act's prohibition on injunctions and the government's sovereign immunity deprive the Court of subject matter jurisdiction. Our jurisdiction accordingly depends on resolving whether the assessments against plaintiff are or are not computational adjustments.

Randell agrees that where assessments are computational adjustments and no injunction may issue, no notice is required. But he maintains that the assessment in question is not a computational adjustment and puts forward three arguments that merit discussion, and to which we now turn.[5]

I  Treatment of Partnership Items as Reflected by the Assessments

■ As noted above, a computational adjustment is "the change in the tax liability of a partner which properly reflects the treatment ... of a partnership item." I.R.C. § 6231(a)(6). Plaintiff's primary contention is that the assessments are not computational adjustments because they do not properly reflect the treatment of a partnership item. To support his assertion, Randell points to one alternative theory put forward by the IRS to disallow the expenses of GATC and Conarbco: that the expenses were "sham," the result of activity lacking economic substance. Seeking symmetry in the tax code, plaintiff's theory asserts that if the expenses are sham and the partnerships were engaged in no activities other than those giving rise to the sham expenses, then the partnership income resulting from those activities must also be "sham." Taxing his distributive share of this sham partnership income, plaintiff states, does not properly reflect the treatment of a partnership item. We may not, however, consider the merits of Randell's claim.

While we are doubtful of Randell's sham income theory, *compare* I.R.C. § 61(a) (1988) ("gross income means all income from whatever source derived") *with* Treas.Reg. § 1.165–1(b) (as amended in 1977) ("Only a bona fide *loss* is allowable. Substance and not mere form shall govern in determining a *deductible loss.*" (emphasis added)) *and Barnett v. Commissioner,* 364 F.2d 742 (2d Cir. 1966) (per curiam) (interest deduction disallowed where transaction was sham), *cert. denied,* 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967); *but see Maring v. Commissioner,*

---

5. Randell also argues that as a result of his previous litigation with the IRS, the government is collaterally estopped from asserting the tax assessments now due. A review of that litigation shows that the issues involved in the instant litigation were not there implicated. Hence, Randell's collateral estoppel claim lacks merit.

56 T.C.M. (CCH) 343, 1988 WL 98367 (1988) (gains from sham transactions eliminated), we may not reach its merits.

Plaintiff's contention would require us to determine whether the partnerships' income was properly included on the partnerships' returns. But, as observed earlier, partnership income is a partnership item, *see* Treas. Reg. § 301.6231(a)(3)–1(a)(1)(i), and we are precluded under TEFRA from examining a partnership item in an individual partner's proceeding, *see Palmer v. Commissioner,* 63 T.C.M. (CCH) 3162, 3164, 1992 WL 137446 (1992) ("[T]he Court has no jurisdiction to review [Commissioner's] adjustments of partnership items in the context of [an individual partner's] deficiency proceeding"); *Trost v. Commissioner,* 95 T.C. 560, 563, 1990 WL 180373 (1990) ("Congress intended administrative and judicial resolution of disputes involving partnership items to be separate from and independent of disputes involving nonpartnership items. Consequently, the portion of any deficiency attributable to a 'partnership item' cannot be considered in the partner's personal case. . . ." (quoting *Maxwell v. Commissioner,* 87 T.C. 783, 788, 1986 WL 22033 (1986))).

█ Plaintiff had earlier opportunities, of which he failed to avail himself, to challenge the partnerships' reported income. In 1985 and 1986 Conarbco reported partnership income and issued Randell Schedules K–1 reporting his distributive share of income. By failing to file a return, Randell treated that income inconsistently with the partnership's treatment of that item. Randell was then required, as stated, to either notify the IRS of the inconsistent treatment, § 6222(b), or to request an administrative adjustment of the partnership item, § 6227(a). He did neither. When the IRS disallowed GATC's deductions for 1983, and Conarbco's deductions for 1985, 1986, and 1987, the result was to increase the amount of partnership income subject to tax. Randell, as a notice partner, could have then sought to have the partnerships' previously reported income reduced to zero. He failed to do so. When no valid petition is filed, the tax treatment of partnership items as set forth in the partnership return and as administratively adjusted by the IRS becomes conclusively established and may not thereafter be contested. *See Sente Inv. Club Partnership v. Commissioner,* 95 T.C. 243, 249, 1990 WL 129305 (1990).

Thus, GATC's 1983 income and Conarbco's 1985, 1986, and 1987 income may not be revisited in this litigation. Nor may Randell's interest in each partnership for the corresponding year, as set forth on the Schedules K–1. In determining whether the assessments properly reflect treatment of partnership items, and were therefore computational adjustments, the inquiry is whether the assessments taxed the appropriate ownership percentage of the partnership income reported on the partnership return, as adjusted by the administrative adjustment. In each case the assessment against Randell is equal to the amount of income reported in the partnership return, without deduction for expenses pursuant to their disallowance in the FPAA, multiplied by the ownership share reported in the Schedule K–1. Randell's contention that the assessments did not properly reflect the treatment of partnership items, and so were not computational adjustments, is therefore without merit.

## II  Randell's Status as a Partner

█ Plaintiff also contends that the assessments cannot be computational adjustments since he was not a partner in GATC in 1983 nor in Conarbco in 1985, 1986, or 1987. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing a summary judgment motion "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiff failed to show that a genuine issue existed as to his status as a partner in GATC or Conarbco.

█ The government's proof of Randell's partnership status was the Schedules K–1 issued by GATC and Conarbco to Randell, identifying him as a partner. Plaintiff asserted that these schedules were erroneously

issued. Plaintiff's statement pursuant to Local Civil Rule 3(g) declared that he "made an investment that probably made him a limited partner in the partnerships.... [But] Plaintiff may have submitted letters of resignation." The statement went on to explain that Randell's tax file had been turned over to a grand jury and not returned and that "[a]ny copies of letters of resignation from the partnerships could be among these documents." These statements, made by Randell's attorney, did not purport to be made on personal knowledge as required under Fed.R.Civ.P. 56(e). As unsupported assertions they were inadequate to defeat a motion for summary judgment. *See Beyah v. Coughlin,* 789 F.2d 986, 989–90 (2d Cir.1986); *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982).

Plaintiff also points to his affidavit, filed in support of his motion to vacate (which the district court deemed a motion for reconsideration) and in opposition to the government's motion for reconsideration. In that affidavit Randell states, "I did pay money to become a partner in certain tax shelter partnerships. I do not recall their names. I do recall writing letters informing some or all of these partnerships that I resign as a partner. I believe that I wrote those letters in 1983 or 1984." But this affidavit was submitted after the summary judgment motions were initially decided.

■ Civil Rule 3(j) of the Local Rules of the Southern District of New York does not permit the filing of affidavits on a motion for reargument unless directed by the court. *See also Caribbean Trading and Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.,* 948 F.2d 111, 115 (2d Cir.1991) (Civil Rule 3(j) "has been interpreted as precluding arguments raised for the first time on a motion for reconsideration"), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992); *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md.,* 768 F.Supp. 115, 116 (S.D.N.Y. 1991) (under Local Rule 3(j) party may not advance new facts, issues, or arguments not previously presented to the court). Even were we to consider plaintiff's affidavit, it does not present a genuine issue as to his partnership status. The statement spec-

ulates that GATC and Conarbco were included in some partnerships he resigned from at some time in 1983 or 1984. His statement, if true, does not preclude the possibility that he resigned from GATC in 1984 or became a partner in Conarbco after resigning from other partnerships in 1983 or 1984. Also telling in this regard is plaintiff's memorandum of law in support of his motion to vacate, which states, "he may not have been a partner. Randell may later concede that he was a partner. Before he does, he would like to see documents he provided to the grand jury...." A summary judgment motion cannot be defeated by a party wishfully thinking that proof might somehow appear to give life to a moribund claim. *See Gray v. Town of Darien,* 927 F.2d 69, 74 (2d Cir.), *cert. denied,* 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991). Thus, no specific facts were timely alleged on personal knowledge to dispute the proof submitted by the government and no genuine issue existed as to Randell's status as a partner in GATC and Conarbco.

### III  Disparate Treatment

■ Randell's final contention need not detain us long. He declares that the assessments are not computational adjustments because they apply a theory unique to him, such that plaintiff has been treated differently from all other GATC and Conarbco partners. According to Randell, other partners were assessed additional taxes based on the disallowed partnership deductions they claimed. Since he never claimed deductions, plaintiff avers the IRS is instead taxing him on additional partnership income. Randell claims the application of a different theory precludes characterizing the assessments as computational adjustments.

Plaintiff's assertion of disparate treatment is wholly without merit. His theory rests on a mischaracterization of the assessments against other GATC and Conarbco partners, who presumably, unlike plaintiff, filed tax returns for the years in question. No tax was assessed against any partner on disallowed deductions *per se;* rather the act of disallowing deductions results in a greater portion of income being taxable—that is, ev-

ery partner is being taxed on income that is no longer offset by deducting an expense. We discern no other theory underlying the assessments made by the IRS. Nor does the fact that partners who previously filed taxes were assessed only for the additional income (as is plaintiff for 1987), whereas Randell is being assessed for his entire distributive share of partnership income for 1983, 1985 and 1986, the years for which he failed to file an individual tax return, present a different theory behind the computational adjustments to plaintiff's tax liability.

## CONCLUSION

The assessments against Randell were computational adjustments for which no notice of deficiency was required. Consequently, the district court properly dismissed the complaint for lack of subject matter jurisdiction.