*Gluck v. Comm'r of Internal Revenue*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of March, two thousand twenty-two.

PRESENT:
> BARRINGTON D. PARKER,
> SUSAN L. CARNEY,
> BETH ROBINSON,
> > *Circuit Judges.*

———————————————————————————

LAURENCE GLUCK, SANDRA PRUSOCK,

> *Petitioners-Appellants,*

> > v.                                                                          No. 21-867

COMMISSIONER OF INTERNAL REVENUE,

> *Respondent-Appellee.*

———————————————————————————

FOR APPELLANTS:                    THOMAS L. FRIEDMAN (Stephen B. Meister, *on the brief*), Meister Seelig & Fein LLP, New York, NY.

FOR APPELLEE:                      JACOB CHRISTENSEN (Lauren E. Hume, *on the brief*), *for* David A. Hubbert, Acting Assistant Attorney General, Tax Division, Department of Justice, Washington, DC.

Appeal from a judgment of the United States Tax Court (Lauber, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on February 19, 2021, is **AFFIRMED**.

In 2012, Petitioners-Appellants Laurence Gluck and Sandra Prusock ("the Glucks," a married couple) sold a condominium, and then attempted to complete a "like-kind exchange" within the meaning of the Internal Revenue Code ("the Code") by purchasing an interest in an apartment building located at 145 East 74th Street in New York City (the "Property"). The Code allows taxpayers to defer capital gains taxes that would otherwise be owed on a sale of property if, within a certain timeframe and subject to other restrictions, they purchase a similar interest in other property. Among the relevant restrictions is that an interest in a partnership cannot qualify for like-kind exchange treatment. I.R.C. § 1031(a) (2012). The Glucks filed a tax return in which they claimed like-kind exchange treatment for their interest in the Property as replacing their condominium.

The Internal Revenue Service ("IRS") audited the Glucks' 2012 tax year return and determined that the Glucks had actually purchased an interest in a partnership that owned the Property, not a direct interest in the Property itself. The IRS's determination was based on a partnership tax return filed for 2012 by Greenberg & Portnoy ("G&P" or the "Partnership"). In the partnership return, G&P represented that it owned the Property and that the Glucks had purchased an interest in the Partnership. Although the Glucks received notice of G&P's tax filing, they did not take the procedural steps required for taxpayers who want to take a tax position that is inconsistent with certain items on a partnership tax return or who want to otherwise challenge a partnership's characterization of those items. *See Randell v. United States*, 64 F.3d 101, 104 (2d Cir. 1995). On audit, the IRS found that the Glucks' tax return was inconsistent with G&P's partnership return and disallowed the Glucks' claimed like-kind exchange, resulting in an increased tax liability for the Glucks of more than $1.5 million.

The Glucks petitioned the U.S. Tax Court for a redetermination of their tax liability. The Tax Court dismissed the Glucks' petition in that regard on the ground that it lacked jurisdiction over the redetermination claim, and the Glucks now appeal. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

"We review *de novo* the Tax Court's legal conclusions and for clear error its factual findings." *Chai v. Comm'r*, 851 F.3d 190, 204 (2d Cir. 2017).[1] Our *de novo* review extends to the "Tax Court's interpretation of federal statutes, including statutes delimiting the scope of its own jurisdiction." *Maier v. Comm'r*, 360 F.3d 361, 363 (2d Cir. 2004).

1.  Background principles

It is well established that "the Tax Court is a court of limited jurisdiction that possesses only those powers expressly conferred upon it by Congress; it may exercise jurisdiction only pursuant to specific legislative enactments." *Id.* In general, Congress has provided the Tax Court with jurisdiction over proceedings to redetermine a tax deficiency assessed by the IRS if a taxpayer timely files a petition following issuance of a notice of deficiency. *See* I.R.C. §§ 6213, 6214. Under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324, however, Congress excluded from this jurisdictional grant disputes concerning certain types of deficiencies related to partnerships.[2]

Through TEFRA, Congress "created a single unified procedure for determining the tax treatment of all partnership items at the partnership level." *Randell*, 64 F.3d at 103. TEFRA defines a "partnership item" broadly, as one that "is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3). Under IRS regulations,

---

[1] Unless otherwise noted, in quoting caselaw, this Order omits any alterations, citations, footnotes, and internal quotation marks.

[2] The Bipartisan Budget Act of 2015 repealed TEFRA's partnership provisions for tax years beginning after 2017. Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625–38 (2015). The parties here do not dispute that the since-repealed TEFRA provisions govern tax returns filed for tax year 2012—the tax year at issue. Unless otherwise indicated, all references in this Order to the Internal Revenue Code and related IRS regulations are to the versions in effect for tax year 2012.

partnership items include the partnership's aggregate items of income, gain, loss, deduction, and credit; each partner's distributive share of those items; each partner's contributions to and distributions from the partnership; and each partner's percentage interest in the partnership. Treas. Reg. § 301.6231(a)(3)–1(a)(1)–(4). Partnership items also include "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." *Id.* § 301.6231(a)(3)–1(b).

If a partnership files a partnership tax return subject to TEFRA procedures, then a partner must either report partnership items consistent with the partnership's return or file a Form 8082, in which it either notifies the IRS of the inconsistent treatment or requests an administrative adjustment of the partnership item.[3] I.R.C. §§ 6222(a)–(b), 6227(a); *Randell*, 64 F.3d at 104. "In the absence of either notification or request for administrative adjustment, a partner who treats items inconsistently with the partnership's treatment of items may be assessed with a deficiency, without notice, as a computational adjustment." *Randell*, 64 F.3d at 104.

The Code defines a "computational adjustment" as "the change in the tax liability of a partner which properly reflects the treatment . . . of a partnership item." I.R.C. § 6231(a)(6). "[A]n assessment attributable to an 'affected item'"—an item that is affected by a partnership item—"may also be made by computational adjustment" if "no further factual determinations are necessary at the partner level." *Callaway v. Comm'r*, 231 F.3d 106, 110 (2d Cir. 2000). The Tax Court does not have jurisdiction to redetermine a deficiency related to the "assessment or collection of any computational adjustment" under TEFRA. I.R.C. § 6230(a)(1).

---

[3] A taxpayer is instructed to file Form 8082 if "[y]ou believe an item was not properly reported on the Schedule K-1 you received from the partnership." IRS, *Instructions for Form 8082*, at 1 (rev. Dec. 2011) (available at https://www.irs.gov/pub/irs-prior/i8082--2011.pdf). The instructions for Form 8082 caution that "[i]f you do not notify the IRS that you are reporting an item . . . inconsistently, any deficiency . . . that results from a computational adjustment to make your amount or treatment of the item on the pass-through [partnership's] return may be assessed immediately." *Id.*

2. Application to the Glucks' tax return

The Tax Court correctly found that the IRS's disallowance of the Glucks' like-kind exchange was a computational adjustment of an affected item that required no further determinations at the partner level, and that it therefore lacked jurisdiction to redetermine the resulting tax deficiency.

It is undisputed that G&P filed a partnership tax return for tax year 2012. G&P's return stated that the Partnership was a rental real estate business that began operating in 1962. The return provided that the Partnership operated one "rental real estate property," located at 145 East 74th Street in New York, NY, and it reported income and claimed depreciation and expenses related to that property. Joint App'x at 683–84. The balance sheet on G&P's return valued its "Assets" at the end of 2012 as more than $20 million, including $3.8 million in "Land" and $14.8 million in "Buildings and other depreciable assets" less "accumulated depreciation." Joint App'x at 678.

G&P's return also included a Schedule K-1 for an entity it identified as 145 East 74 Owner LLC ("Gluck LLC"). Gluck LLC is a single-member limited liability company owned by Laurence Gluck. The Glucks concede that they timely received a copy of the Schedule K-1 from G&P. The Schedule K-1 identified Gluck LLC's share of G&P's partnership profit, losses, and capital as 0% at the beginning of the 2012 tax year and as 50% at the end of the 2012 tax year.[4] It also reflected that Gluck LLC contributed more than $17 million in capital to the partnership in 2012.

G&P's return therefore implicates at least three partnership items relevant here. First, the return provided that G&P was a partnership for federal tax purposes. Whether a partnership exists for federal tax purposes is a partnership item. *See, e.g.*, *United States v. Woods*, 571 U.S. 31, 39 (2013); *Napoliello v. Comm'r*, 655 F.3d 1060, 1065 (9th Cir. 2011).

---

[4] The like-kind exchange at issue in this appeal concerns whether Gluck LLC acquired a 25% share of the partnership or the Property. Gluck LLC separately acquired an additional 25% stake in 2012 that is not at issue in this case, which is why the partnership tax return reports that Gluck LLC acquired a 50% total share in the partnership.

Second, the return provided that Gluck LLC was a partner in G&P and that Gluck LLC acquired a 50% interest in G&P—not the Property—through its capital contributions in 2012. Whether a purported partner is an actual partner is a partnership item. *See Blonien v. Comm'r*, 118 T.C. 541 (2002) ("[T]o the extent that the taxpayer's claim that he was not a partner would affect the distributive shares of the other partners, the taxpayer's claim is a partnership item."). G&P distributed income and deductions among the partners using calculations that included Gluck LLC as a 50% partner, and those distributive shares would have been affected if Gluck LLC was not a partner. Thus, whether Gluck LLC was a partner in G&P is also a partnership item.

Third, G&P's return represented that the Partnership owned the Property. The return stated that the Partnership is a "rental real estate" business, and it listed the Property as the sole source of its rental real estate income. Joint App'x 673, 683. Thus, the $18.6 million in combined "Assets" that the Partnership reported related to "Buildings" and "Land" can only be its interest in the Property. Joint App'x at 678. G&P also reported income and deductions related to the Property, including depreciation, and it distributed the income and deductions to its partners based on their ownership shares in the Partnership. This tax reporting reflected that the Partnership claimed to own the Property. For example, the Partnership could report the depreciation deductions "only if [it] ha[d] a genuine ownership interest in the property." *Altria Grp., Inc. v. United States*, 658 F.3d 276, 284–85 (2d Cir. 2011). Whether G&P owned the Property is therefore a partnership item because it is a "factual determination[]" underlying the "characterization of items of income, credit, gain, loss, [or] deduction" reported on G&P's partnership return. Treas. Reg. § 301.6231(a)(3)-1(b).

The reporting of these partnership items on G&P's partnership return was plainly inconsistent with the like-kind exchange treatment that the Glucks claimed on their tax return. If G&P was a partnership that owned the Property, and the Glucks (acting through Gluck LLC) acquired an interest in the Partnership rather than a direct interest in the Property, then they would not be eligible to receive like-kind exchange treatment for the Property. *See* I.R.C. § 1031(a)(2)(D) (excluding from like-kind exchange treatment "any exchange of . . . interests in a partnership"). This inconsistency was apparent not only from

6

the Partnership's tax return, as detailed above, but also from the face of the Schedule K-1 that the Glucks received. The documents left no doubt that the Schedule K-1 related to the Property. The Schedule K-1 was sent to Gluck LLC, the entity that Laurence Gluck formed for the purpose of purchasing the Property, and it identified the Partnership as "Greenberg & Portnoy c/o Eugene M. Grant & Co." Joint App'x at 201. The same company, Eugene M. Grant & Co., was identified as the "Managing Agent of the Property" in the "Tenancy in Common Agreement" detailing a "Venture" between the Property owners that was signed in 1992 ("1992 Agreement"). Joint App'x at 76, 81. Eugene M. Grant & Co.'s address was provided as the "principal office of the Venture." Joint App'x at 76. The 1992 Agreement was attached as an exhibit to Gluck LLC's purchase agreements with respect to the Property, and Gluck LLC, as the successor of owners who signed the 1992 Agreement, is bound by its terms. Thus, the reference to Eugene M. Grant & Co. makes it readily apparent that the Schedule K-1 related to a "Venture" involving the Property.

Additionally, the Schedule K-1 detailed, among other items, Gluck LLC's share of the Partnership's "rental real estate income" and its depreciation from "rental real estate." Joint App'x at 201–2. As described above, the Schedule K-1 also identified Gluck LLC's share of the Partnership's profit, losses, and capital as 0% at the beginning of the 2012 tax year, and as 50% at the end of the 2012 tax year—matching the share of the Property that the Glucks contend that Gluck LLC acquired in 2012. For the same reasons as those discussed above, the reporting of these items on the Partnership's Schedule K-1 required the Partnership to be claiming to own the Property. Indeed, the Glucks' Tax Court petition implicitly acknowledges that the inconsistent claim to the Property's ownership was readily apparent from the Schedule K-1: it states that, "[i]mmediately upon receipt of the Schedule K-1, [their] accountant contacted a representative of certain of the other . . . owners objecting to the tax reporting practices and advising that it was an improper tax reporting treatment for ownership" of the Property. Joint App'x at 21.

Nonetheless, the Glucks did not file a Form 8082 with the IRS to report, as required, that they were treating partnership or "affected" items inconsistently with partnership items on a partnership tax return or in which they requested an administrative adjustment. Instead,

7

in their 2012 tax return, the Glucks simply ignored the Partnership's tax return and filed an individual tax return claiming like-kind exchange treatment for the purchase of the Property, despite the apparent inconsistency. Because the Glucks did not file a Form 8082 and no partnership-level proceedings to resolve any disputed partnership items took place, the treatment of partnership items on G&P's return is "conclusive" under the Code. I.R.C. § 6230(c)(4); *see also Randell*, 64 F.3d at 108 ("[W]e are precluded under TEFRA from examining a partnership item in an individual partner's proceeding.").

Because the partnership items on G&P's return became unassailable, the IRS was authorized to make a computational adjustment to the Glucks' tax return to "properly reflect[] the treatment . . . of [the] partnership item[s]," I.R.C. § 6231(a)(6), and any "affected item[s]," *id.* § 6231(a)(5), for which "no further factual determinations [were] necessary at the partner level," *Callaway*, 231 F.3d at 110. The Tax Court correctly concluded that whether the Glucks were entitled to claim a like-kind exchange related to the Property was an "affected item" that required no further factual determinations at the partner level. If G&P owned the Property and Gluck LLC acquired an interest in the Partnership, as established through the partnership items detailed above, then Gluck LLC could not be found to have purchased a direct interest in the Property, and the Glucks could not claim a like-kind exchange related to the transaction. *See* I.R.C. § 1031(a)(2)(D). In other words, as the Tax Court explained, "once Gluck LLC is deemed to have acquired a partnership interest rather than a real estate interest, consistently with the treatment of partnership items on G&P's return, [the Glucks'] nonentitlement to section 1031 deferral follows automatically as a matter of law." Sp. App'x at 18–19.

Accordingly, the IRS was authorized to make a computational adjustment to the Glucks' tax return, and the Tax Court lacked jurisdiction to redetermine that computational adjustment in the context of a deficiency proceeding. I.R.C. § 6230(a)(1).

3. The Glucks' arguments to the contrary are unpersuasive

None of the Glucks' arguments undermine the reasoning set forth above. First, the Glucks submit that TEFRA procedures are simply inapplicable to determining the

8

characterization of property for the purpose of Section 1031, relying on Treasury regulations that, they claim, require the IRS to look to state and local law to determine whether property is "real property" that qualifies for a like-kind exchange under Section 1031. But the regulations the Glucks rely on did not take effect until December 2, 2020—well after the 2012 transaction at issue in this case—and the Glucks do not identify any regulation in effect in 2012 that supports their argument.[5] *See* Treas. Reg. § 1.1031(a)–3(c) (2020). The regulations therefore cannot support the Glucks' claims in this appeal.[6]

Second, the Glucks emphasize their view that nothing in the record reflects that they knew at the time of purchase that the existing Property owners operated as a partnership for federal tax purposes, contending that they should therefore be relieved of any adverse tax consequences related to their purchase. But the Glucks do not reference any authority for this position that undermines the reasoning set forth above. Instead, the Glucks' argument underscores why it is so perplexing that they did not file a Form 8082 once they received a Schedule K-1 from G&P that was completely at odds with their claimed understanding of the purchase. The Glucks' opportunity to resolve the proper characterization of their interest

---

[5] We also observe that, although the regulations the Glucks rely on provide that property is real property for the purpose of Section 1031 "if, on the date it is transferred in an exchange, the property is real property under the law of the State or local jurisdiction in which that property is located," they also specifically exclude any "interests in a partnership," "regardless of the classification of such property under State or local law." Treas. Reg. § 1.1031(a)–3(a)(5)–(6) (2020).

[6] There may be circumstances in which parties could operate as a partnership for federal tax law purposes while individually owning a real property interest in property used by that partnership. If a property used by a partnership with that type of organization were exchanged, it is possible that it could qualify for like-kind exchange treatment, and the owner's claimed like-kind exchange would not necessarily be inconsistent with the filing of a partnership tax return. In such a scenario, the like-kind exchange might not be subject to a computational adjustment as an affected item, and therefore TEFRA might not preclude jurisdiction over a Tax Court petition if the IRS disallowed the like-kind exchange. Here, however, the Glucks' claimed direct ownership interest in the Property cannot be reconciled with G&P's tax return, which claimed ownership of the same property and provided that Gluck LLC acquired an interest in the Partnership through its capital contributions. We express no view as to whether the Glucks actually acquired a direct interest in the real property used by the Partnership, nor about the merits of the Glucks' contention that their transactions qualified as a like-kind exchange under section 1031; because G&P's partnership return reported that the Partnership owned the Property, the Glucks were required to raise their challenge to the characterization in G&P's tax return in the context of a partnership-level proceeding, and the Tax Court correctly concluded that it did not have jurisdiction to adjudicate the Glucks' claims in the context of a partner-level deficiency proceeding.

in the Property was when they received the Schedule K-1 informing them of the Partnership's tax filing. Had the Glucks filed Form 8082, which is required for taxpayers choosing to make an election that is inconsistent with a partnership tax return, then they may have avoided the later computational adjustment. The consequence of their failure to file Form 8082 may be harsh, but it is the result that follows from the statute, and it is one that the Glucks could have with little effort avoided at an earlier stage.

Finally, the Glucks submit that the Tax Court had jurisdiction over their challenge to the notice of deficiency because they timely filed their petition and because the notice of deficiency did not show on its face that the deficiency was assessed based on a computational adjustment. The only authority that the Glucks point to in support of their argument is *Winter v. Comm'r of Internal Revenue*, 135 T.C. 238 (2010). *Winter* addressed whether the Tax Court had "jurisdiction over the adjustment to [the taxpayer's] distributive share of S corporation income," and explained that the statutory provision governing deficiency procedures for S corporations is "unlike the provisions" under TEFRA. *Id.* at 241, 245. The *Winter* court observed that, when Congress removed S corporations from TEFRA's audit procedures, it "specifically determined S corporations should not be treated the same as partnerships." *Id.* at 245. Thus, *Winter* lends no support to the Glucks' argument.

The Glucks complain that the IRS advised them of the tax deficiency in a form notice whose text invited them to contest the deficiency by petitioning the Tax Court but omitted mention that in their case, because the deficiency arose from a computational adjustment, it could not actually be challenged in the Tax Court. The IRS explains that it sometimes issues a "protective" notice of deficiency to preserve its options if, for example, a court disagrees with its characterization and holds that the Tax Court has jurisdiction because an affected item requires partner-level determinations. Appellee's Br. at 37 & n.5. In any event, however, it is satisfaction of the statute's jurisdictional requirements, not the mere issuance of a notice of deficiency, that confers jurisdiction on the Tax Court. *See Maier*, 360 F.3d at 363 ("[T]he Tax Court is a court of limited jurisdiction that possesses only those powers expressly conferred upon it by Congress."). Here, notwithstanding the boilerplate language on the notice, the Tax Court correctly determined that it lacked jurisdiction to

redetermine the computational adjustment made in connection with the IRS's disallowance of the Glucks' claimed like-kind exchange.

* * *

We have considered all of the Glucks' remaining arguments and find in them no basis for reversal. For the reasons set forth above, the judgment of the Tax Court dismissing the petition is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court