133 T.C. No. 19

UNITED STATES TAX COURT

BLAK INVESTMENTS, KYLE W. MANROE TRUST, ROBERT AND LORI MANROE,
TRUSTEES, TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1283-07.                Filed December 23, 2009.

In 2001 two partners of partnership P borrowed
Treasury securities and sold them in the open market;
i.e., a short sale. They contributed the short sale
proceeds and the obligation to cover the short sale to
P in exchange for interests in P. The two partners
claimed their bases in P were increased by the short
sale proceeds but not reduced by the obligation to
cover the short sale. P then redeemed the two
partners' interests in P. On their Federal income tax
returns the two partners claimed significant losses
with respect to the redemption and subsequent sale of
assets received in the redemption. Neither the
partnership nor the two partners disclosed their
participation in the transaction on tax returns for
2001 and 2002.

Sec. 6501(c)(10), I.R.C., provides that if a
taxpayer fails to disclose on a return or statement for
any taxable year any information required under sec.

6011, I.R.C., with respect to a listed transaction as defined in sec. 6707A(c)(2), I.R.C., the period of limitations for assessment of any tax imposed with respect to the transaction does not expire until 1 year after the Internal Revenue Service is furnished the information so required.  R argues that P and its partners were required to disclose their participation in the transaction at issue under sec. 6501(c)(10), I.R.C.

Petitioner argues that:

(1) Because sec. 6707A, I.R.C., is incorporated into sec. 6501(c)(10), I.R.C., the effective date of sec. 6707A, I.R.C., controls and sec. 6501(c)(10), I.R.C., cannot apply to any transaction for which a return or statement was due on or before Oct. 22, 2004;

(2) sec. 1.6011-4T, Temporary Income Tax Regs. (the temporary regulation), 67 Fed. Reg. 41327 (June 18, 2002), which requires disclosure of participation in listed transactions, is invalid because it violates:

(a) Executive Order 12866, 3 C.F.R. 638 (1994) (Executive Order 12866);

(b) the Regulatory Flexibility Act (RFA), 5 U.S.C. secs. 601-612 (1994);

(c) the Administrative Procedure Act, 5 U.S.C. sec. 553(b) and (c) (1994).

Held:  Sec. 6501(c)(10), I.R.C., is effective for tax years with respect to which the period for assessing a deficiency did not expire before Oct. 22, 2004.  The effective date of sec. 6707A, I.R.C., defining "listed transaction" and incorporated into sec. 6501(c)(10), I.R.C., has no bearing on the application of sec. 6501(c)(10), I.R.C., in this case.

Held, further: the temporary regulation does not violate Executive Order 12866 or the RFA.

Held, further: the temporary regulation was replaced by sec. 1.6011-4, Income Tax Regs. (the final regulation), T.D. 9046, 2003-1 C.B. 614, effective Feb. 28, 2003, and the rules of the temporary regulation were incorporated into the final regulation.

Held, further: the final regulation is valid and requires disclosure of the 2001 transaction on the partnership's and the partners' 2002 returns.

Held, further:  The period of limitations for assessment of tax resulting from the adjustment of partnership items with respect to the transaction at issue is open for the year 2001 under sec. 6501(c)(10), I.R.C.

Ernest S. Ryder, Richard V. Vermazen, and Lauren A. Rinsky, for petitioner.

Donna F. Herbert and Jonathan H. Sloat, for respondent.

OPINION

HAINES, Judge:  This case is before the Court on respondent's motion and petitioner's cross-motion for partial summary judgment filed pursuant to Rule 121.[1]  The issues are: (1) Whether the effective date of section 6707A precludes application of section 6501(c)(10) to the transaction at issue; (2) whether the transaction at issue is a listed transaction; and (3) whether the period of limitations for assessment of tax resulting from the adjustment of partnership items with respect to the transaction at issue is open for 2001 under section 6501(c)(10).

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code), as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

## Background

BLAK Investments (the partnership) is a California general partnership created by Robert and Lori Manroe (the Manroes). The Manroes are partners of the partnership as are two trusts created by the Manroes for the benefit of their children. The petition has been brought by Robert and Lori Manroe, as trustees of the Kyle W. Manroe Trust, tax matters partner of the partnership.

### I. The Transaction at Issue

On December 4, 2001, the Manroes as trustees of the Manroe Family Trust opened an account with A.G. Edwards & Sons, Inc. On December 10, 2001, the Manroes deposited $825,000 into the Manroe Family Trust account. On December 12, 2001, the Manroes, through the Manroe Family Trust Account, borrowed Treasury notes maturing on November 15, 2006, with a maturity value of $6,815,000. The Treasury notes were then sold on the open market for $5,481,713; i.e., the Treasury notes were sold short.[2] Of the proceeds, $2,491,233 was allocated to Mr. Manroe and $2,990,480 was allocated to Ms. Manroe.

On December 12, 2001, the Manroes contributed the short sale proceeds, the $825,000 previously deposited into the Manroe Family Trust account, and the obligation to cover the short sale

---

[2]A short sale is the sale of borrowed securities, typically for cash. The short sale is closed when the short seller buys and returns identical securities to the person from whom he borrowed them.

to the partnership in exchange for a combined 95.2964-percent partnership interest. The two trusts for the children each contributed $20,000 in exchange for respective 2.3518-percent partnership interests.

Mr. Manroe reported a $2,866,688 capital contribution to the partnership, of which $2,491,233 was proceeds from the short sale. Ms. Manroe reported a $3,440,025 capital contribution to the partnership, of which $2,990,480 was proceeds from the short sale. Neither of their contributions was reduced by the partnership's obligation to cover the short sale.

On December 28, 2001, the partnership redeemed Mr. Manroe's partnership interest for $380,988.[3] Of that amount, Mr. Manroe received $330,988 and 82,645 Swiss francs having a fair market value of $50,000. On December 28, 2001, the partnership redeemed Ms. Manroe's partnership interest for $457,185. That amount did not include any foreign currency.

On December 31, 2001, Mr. Manroe converted his 82,645 Swiss francs into U.S. dollars in the amount of $45,931.

On January 11, 2002, the partnership covered the short sale by purchasing treasury notes with a face value of $6,815,000 maturing on November 16, 2006, for $5,600,567.

---

[3]The record is inconsistent as to whether the redemption price of Mr. Manroe's interest is $380,988 or $330,988. The inconsistency has no bearing on the issues presented in these motions. For purposes of these motions, we shall assume the redemption price was $380,988.

II.   The Manroes' Position on the Tax Consequences of the Transaction

The Manroes claim that upon making their initial contributions to the partnership their total basis in their partnership interests was $6,306,713, equal to the total short sale proceeds of $5,481,713 and the $825,000 cash.  See sec. 722.  The Manroes took the position that the obligation to cover the short sale was not a liability for purposes of section 752(b).

Mr. Manroe claims that when the partnership redeemed his partnership interest, he recognized no gain or loss because the money distributed did not exceed his basis in the partnership.  See sec. 731(a).  He claims that his basis in the Swiss francs became $2,585,700; i.e., his total basis in the partnership interest less the cash distributed.  See sec. 732(b).  Mr. Manroe further claims that when he converted his Swiss francs into U.S. dollars he recognized an ordinary loss of $2,539,769.  The purported loss was claimed on Schedule E, Supplemental Income and Loss, of the Manroes' joint 2001 Form 1040, U.S. Individual Income Tax Return.  The loss was reported as being from "Culebra Trading Partners, Ltd.", although it was attributable to the transaction described above.

Ms. Manroe claims that when the partnership redeemed her partnership interest, she recognized a short-term capital loss of $2,982,840, equal to her basis less the amount of money received.  See secs. 731(a)(2), 741.  The short-term capital loss was

claimed on Schedule D, Capital Gains and Losses, of the Manroes'
2001 Form 1040. The claimed loss offset $1,474,391 of short-term
capital gains for 2001. The Manroes claimed a $458,190 carryover
loss on their 2002 return.[4]

Neither the partnership nor the Manroes attached a
disclosure statement to its or their 2001 return. They did not
file a copy of a disclosure statement with respondent's Office of
Tax Shelter Analysis. No material adviser provided respondent
with information regarding the partnership's or the Manroes'
participation in the transaction. See sec. 6112.

III. Procedural History

On October 13, 2006, respondent issued the partnership a
notice of final partnership administrative adjustment (FPAA).
Respondent determined that the partnership was a sham, was formed
and availed of solely for the purpose of overstating the bases of
partnership interests, and lacked economic substance. Respondent
contends that the consequence of these determinations, if they
are sustained, would be the disallowance of the losses the
Manroes claimed on their 2001 and 2002 joint returns and

_____

[4]On Oct. 18, 2006, shortly after the issuance of the FPAA,
the Manroes submitted to respondent a Form 1040X, Amended U.S.
Individual Income Tax Return, for 2002. The amended return
eliminated the capital loss carryover and increased the Manroes'
income by $458,190. Respondent did not process the amended
return.

imposition of accuracy-related penalties determined at the partnership level upon the partners.  See sec. 6221.

The tax matters partner timely petitioned the Court for review of the FPAA, asserting among other things that the statute of limitations bars the determination of a liability with respect to partnership items or affected items for 2001.  Respondent, in his answer, asserted that section 6501(c)(10) applies to the transaction because it constituted a listed transaction requiring disclosure.  Petitioner denied the applicability of section 6501(c)(10) in its reply.  On November 30, 2007, the Court filed respondent's motion for partial summary judgment on the statute of limitations issue.  On March 10, 2008, the Court filed petitioner's cross-motion for partial summary judgment on the same issue.  A hearing on the motions was held in San Diego, California.

Discussion

I.   The Period of Limitations for Partnerships and Their
     Partners Generally

Under the general rule set forth in section 6501(a), the Internal Revenue Service (IRS) is required to assess tax (or send a notice of deficiency) within 3 years after a Federal income tax return is filed.  In the case of a tax imposed on partnership items, section 6229 sets forth special rules to extend the period of limitations prescribed by section 6501 with respect to partnership items or affected items.  See sec. 6501(n)(2); Rhone-

<u>Poulenc Surfactants & Specialties, L.P. v. Commissioner</u>, 114 T.C. 533, 540-543 (2000).  Section 6229 provides in pertinent part:

> SEC. 6229.   PERIOD OF LIMITATIONS FOR MAKING
>             ASSESSMENTS.
>
> (a) General Rule.--Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of--
>
> > (1) the date on which the partnership return for such taxable year was filed, or
>
> > (2) the last day for filing such return for such year (determined without regard to extensions).

Section 6229 supplements section 6501.  It is not a separate statute of limitations for assessments attributable to partnership items.  <u>AD Global Fund, LLC v. United States</u>, 481 F.3d 1351 (Fed. Cir. 2007); <u>Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner</u>, <u>supra</u> at 545.  In <u>Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner</u>, <u>supra</u> at 539, the Court analyzed sections 6229 and 6501 as applicable to an FPAA.  The Court stated:

> The Internal Revenue Code prescribes no period during which TEFRA partnership-level proceedings, which begin with the mailing of the notice of final partnership administrative adjustment, must be commenced.  However, if partnership-level proceedings are commenced after the time for assessing tax against the partners has expired, the proceedings will be of no avail because the expiration of the period for assessing tax against the partners, if properly raised, will bar any assessments attributable to partnership items.

Id. at 534-535; see AD Global Fund, LLC v. United States, supra; G-5 Inv. Pship. v. Commissioner, 128 T.C. 186 (2007).

Under section 6229(d) the mailing of an FPAA suspends the running of both 3-year periods--the section 6501(a) period and the section 6229(a) period. See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra at 552-553. The suspension is for the period during which an action for judicial review of the FPAA may be brought (and, if an action is brought, until the decision of the court has become final) and for 1 year thereafter. Sec. 6229(d).

The Manroes filed their 2002 return on October 15, 2003. The FPAA was issued on October 13, 2006. Petitioner concedes that pursuant to section 6501(a) the period for assessment of tax attributable to partnership items for the Manroes' 2002 tax year was open when the FPAA was issued.

The Manroes filed their 2001 return on October 15, 2002, more than 3 years before the issuance of the FPAA. Therefore, under the general rule of section 6501(a) the Manroes contend that the 2001 tax year has closed. However, respondent argues that the period for assessment of tax attributable to partnership items for 2001 is open under section 6501(c)(10) with respect to a listed transaction if the taxpayer has not made the requisite disclosure of his participation in the listed transaction.

Neither party disputes our jurisdiction over this issue, but we shall examine it nonetheless. Section 6226 provides in pertinent part:

SEC. 6226. JUDICIAL REVIEW OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENTS.

(c) Partners Treated as Parties.--If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year--

(1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and

(2) the court having jurisdiction of such action shall allow each such person to participate in the action.

(d) Partner Must Have Interest in Outcome.--

(1) In order to be party to action.-- Subsection (c) shall not apply to a partner after the day on which--

(A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or

(B) the period within which any tax attributable to such partnership items may be assessed against that partner expired.

Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted to participate in such action (or file a readjustment petition under subsection (b) or paragraph (2) of this subsection) solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion.

In PCMG Trading Partners XX, L.P. v. Commissioner, 131 T.C. __, __ n.9 (2008) (slip op. at 12-13), the Court noted that we have the authority to determine whether partner years are open to assessment for any period in dispute. Specifically, we stated:

> Generally the Court's jurisdiction in a partnership proceeding is restricted to determining "partnership items". Sec. 6226(f); Petaluma FX Partners, LLC v. Commissioner, 131 T.C. __, __ (2008) (slip op. at 11-12). However, our jurisdiction over whether the period of limitations has expired as to individual partners presents an exception since the expiration of the period of limitations can depend on facts that are peculiar to the individual partners. See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533 (2000), appeal dismissed and remanded 249 F.3d 175 (3d Cir. 2001). * * *

In Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra, the Court determined that section 6226 enabled the partners in a partnership action to assert that the period of limitations for assessing any tax attributable to partnership items had expired and that the Court had jurisdiction to decide whether that assertion was correct. As we observed therein:

> Congress recognized that the periods for assessing tax against individual partners may vary from partner to partner and specifically provided that an individual partner will be permitted to participate as a party in the partnership proceeding "solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person". * * *

Id. at 546 (citing section 6626(d)(1)(B)).

In <u>Curr-Spec Partners, LP v. Commissioner</u>, T.C. Memo. 2007-289, affd. 579 F.3d 391 (5th Cir. 2009), the Commissioner issued an FPAA for the taxable year 1999, conceded that the assessment period for that year had expired, but argued that adjustments made in the FPAA affected three partners' net operating loss carryforwards for 2000 and 2001. The partners, in a partnership-level action, conceded that the FPAA was issued within 3 years of the time the partners filed their respective 2000 and 2001 tax returns but moved for summary judgment on the grounds that the period of limitations for assessing tax attributable to partnership items had expired. The partners further argued, on brief, that issues related to the period of limitations for their 2000 and 2001 tax years were partner-level determinations that could not be made in a partnership-level proceeding. The Court rejected the partners' contentions and held that the period for assessing tax against the partners had not expired and remained suspended. Accordingly, under section 6226 and <u>PCMG Trading Partners</u> we have the authority to address the Manroes' contention that the period of limitations for assessing tax attributable to partnership items for 2001 has expired.

II. <u>The Effective Dates of Sections 6501(c)(10) and 6707A</u>

On October 22, 2004, Congress enacted the American Jobs Creation Act of 2004 (AJCA), Pub. L. 108-357, sec. 814(a), 118

Stat. 1581, which added section 6501(c)(10) to the Code.  Section

6501(c)(10) provides:

> (10) Listed transactions.-- If a taxpayer fails to include on any return or statement for any taxable year any information with respect to a listed transaction (as defined in section 6707A(c)(2)) which is required under section 6011 to be included with such return or statement, the time for assessment of any tax imposed by this title with respect to such transaction shall not expire before the date which is 1 year after the earlier of--
>
>> (A) the date on which the Secretary is furnished the information so required, or
>>
>> (B) the date that a material advisor meets the requirements of section 6112 with respect to a request by the Secretary under section 6112(b) relating to such transaction with respect to such taxpayer.

Section 6501(c)(10) incorporates by cross-reference the

definition of "listed transaction" set forth in section

6707A(c)(2), which was added to the Code by AJCA sec. 811, 118

Stat. 1575.  Section 6707A(c) provides:

> (1) Reportable transaction.--The term "reportable transaction" means any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion.
>
> (2) Listed transaction.--The term "listed transaction" means a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011.

The parties dispute the effect of the incorporation of

section 6707A(c)(2) in section 6501(c)(10).  The dispute centers

on the effective date provided in the AJCA with respect to each section.

We begin with a review of the principles of statutory construction. The "cardinal principle" of statutory construction requires us "to give effect, if possible, to every clause and word of a statute". United States v. Menasche, 348 U.S. 528, 538-539 (1955) (internal quotation marks omitted). In applying the traditional rules of statutory construction, we assume that Congress uses language in a consistent manner, unless otherwise indicated. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235-236 (1955). The various sections of the Code should be construed so that one section will explain and support and not defeat or destroy another section. Crane v. Commissioner, 331 U.S. 1, 13 (1947). Furthermore, "Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." E.I. du Pont de Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924).

AJCA sec. 814(b), 118 Stat. 1581, provides that section 6501(c)(10) is effective for tax years "with respect to which the period for assessing a deficiency did not expire before" October 22, 2004. On October 22, 2004, the period for assessing a deficiency with respect to the Manroes' 2001 tax year was open

under section 6501(a).[5]  Therefore, if we regard as determinative the effective date provided in AJCA sec. 814(b), section 6501(c)(10) is effective for the Manroes' 2001 tax year.

Section 6707A, which imposes a penalty for failure to include on a return or statement any required information with respect to reportable transactions and listed transactions, is effective for returns and statements the due date for which is after October 22, 2004, and which were not filed before that date.  AJCA sec. 811(c), 118 Stat. 1577.  Petitioner argues that because section 6707A applies only to returns and statements due after October 22, 2004, section 6501(c)(10) cannot apply to any transaction for which a return or statement was due on or before October 22, 2004.

In support of this proposition, petitioner argues that there are two types of listed transactions:  (1) Section 6707A listed transactions and (2) listed transactions that predate section 6707A.  Petitioner argues that section 6707A listed transactions are those for which a penalty can be assessed under section 6707A and which are subject to section 6501(c)(10).  The second type of listed transactions would be those for which no penalty under section 6707A can be assessed and which are not subject to section 6501(c)(10).

---

[5]The Manroes' 2001 return was filed on Oct. 15, 2002, starting the running of the 3-year period of limitations under sec. 6501(a), which thus remained open on Oct. 22, 2004.

Nothing in the Code, the AJCA, or the legislative history indicates that Congress intended that there be two types of listed transactions in the manner petitioner suggests. Section 6707A(c) defines "listed transaction" by reference to the regulations promulgated under section 6011. Regulations under section 6011 defining "listed transaction" were first published by the Department of the Treasury and the IRS in temporary and proposed form on February 28, 2000. 65 Fed. Reg. 11207 (Mar. 2, 2000). Similarly, the legislative history makes clear that the section 6707A penalty applies to reportable and listed transactions as defined in the section 6011 regulations. H. Conf. Rept. 108-755, at 582-584 (2004); see also Staff of Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 108th Congress, at 360 (J. Comm. Print 2005). In other words, section 6707A does not alter the definition of reportable transaction or listed transaction. Accordingly, we find that there are not two types of listed transactions in the manner petitioner contends.

Section 6707A(c) applies to statements and returns due after October 22, 2004, while section 6501(c)(10) applies to tax years for which the period for assessing a deficiency did not expire before October 22, 2004. Because AJCA sec. 814(a) makes section 6501(c)(10) applicable for tax years for which the period of limitations remains open as of the date of enactment of the AJCA,

section 6501(c)(10) may apply to transactions which are required to be disclosed on returns due well before that date and which therefore would not be subject to a section 6707A penalty if left undisclosed.  For that reason, application of the effective date of section 6707A to section 6501(c)(10) would render the express effective date of section 6501(c)(10) meaningless, violating the cardinal principle of statutory construction.

We also find significant that section 6707A and section 6501(c)(10) have different purposes.  Section 6707A imposes a penalty.  Congress intended the penalty to apply prospectively, so that a taxpayer is penalized only if the return was not yet due when the AJCA was signed into law.  AJCA sec. 811(c).  On the other hand, section 6501(c)(10) keeps open a limitations period which had not yet expired as of the date of enactment of the AJCA if the taxpayer failed to make the required disclosure of involvement in a listed transaction on a return due before that date.  The legislative history details the purpose of leaving the limitations period open.

> The Committee has noted that some taxpayers and their
> advisors have been employing dilatory tactics and
> failing to cooperate with the IRS in an attempt to
> avoid liability because of the expiration of the
> statute of limitations.  The Committee accordingly
> believes that it is appropriate to extend the statute
> of limitations for unreported listed transactions.

H. Rept. 108-548 (Part 1), at 267 (2004); see also Staff of Joint Comm. on Taxation, supra at 368 (extension of period of

limitations "will encourage taxpayers to provide the required

disclosure and will afford the IRS additional time to discover

the transaction if the taxpayer does not disclose it").  On July

23, 2004, Senator Charles Grassley, Chairman of the Committee on

Finance, and Senator Max Baucus, Ranking Member of the Committee

on Finance, proposed that the period of limitations be extended

to allow the IRS to challenge tax-avoidance transactions,

specifically Son-of-BOSS transactions[6] that occurred as early as

2000.[7]

> Son of Boss transactions were aggressively marketed in
> the late 1990s and 2000 to companies and high net-worth
> individuals.  Many of these transactions generated tax
> losses of between $10 million and $50 million.  On
> August 15th, 2004, the statute of limitations for extended
> calendar year 2000 income tax returns will close for a
> significant number of non-disclosing Son of Boss investors.
> These investors will escape their rightful tax liability
> after that date.

---

[6]Son-of-BOSS is a variation of a slightly older alleged tax shelter known as BOSS, an acronym for "bond and option sales strategy".  There are a number of different types of Son-of-BOSS transactions, but they all have in common the transfer of assets encumbered by significant liabilities to a partnership, with the goal of increasing basis in that partnership.  The liabilities are usually obligations to buy securities and typically are not completely fixed at the time of transfer.  The partnership treats the liabilities as uncertain and ignores them in computing basis. The objective is that the partners will have a basis in the partnership so great as to provide for large--but not out-of-pocket--losses on their individual tax returns.  Kligfeld Holdings v. Commissioner, 128 T.C. 192, 194 (2007).

[7]Senators Grassley and Baucus were proposing the inclusion of a provision similar to sec. 6501(c)(10) in an amendment to the Jumpstart Our Business Strength (JOBS) Act, S. 1637, 108th Cong., 1st sess. (2003), the Senate version of a bill that ultimately passed as the AJCA.

It is the view of the Chairman and Ranking Member of the
Senate Finance Committee that non-disclosing Son of Boss
investors should not be allowed to "run out the clock" on
the statute of limitations before the IRS finds them.  The
IRS and Department of Treasury have been on record in
opposing these transactions since 1999.  The purchase of
these tax shelters in the year 2000 was an act of sheer
defiance and disregard for the tax laws of the United
States.  The Senate and House versions of the bill * * *
contain a measure that would hold open the statute of
limitations on a transaction listed by the Treasury
Department as a tax shelter, such as the Son of Boss
transaction, but this measure only applies to taxable years
that are open to audit after the * * * bill is enacted.
* * *  [Press Release, Senator Charles Grassley, Details of
Plans to Ensure Continued "Son of Boss" Enforcement (July
23, 2004).]

Had Congress intended section 6501(c)(10) to apply only to

transactions for which a return or statement was due after

October 22, 2004, it could have done so expressly.  Similarly, if

Congress had intended to apply the effective date of section

6707A to section 6501(c)(10), it could have done so by limiting

application of section 6501(c)(10) to cases in which a taxpayer

is subject to a penalty under section 6707A.  Congress did not

choose either of those avenues.

Petitioner argues that respondent is applying section

6501(c)(10) retroactively, and if Congress had intended

retroactive application, Congress would have so expressly

stated.[8]  Petitioner is mistaken.  Section 6501(c)(10) does not

---

[8]Petitioner refers to the provision as an "ex post facto
clawback".  The constitutional prohibition against ex post facto
laws applies only to penal legislation that imposes or increases
criminal punishment for conduct predating its enactment.

(continued...)

reopen an assessment period that expired before its enactment.
See H. Conf. Rept. 108-755, supra at 593 n.482; Staff of Joint
Comm. on Taxation, supra at 369 n.663. Keeping open the period
of limitations in this fashion is not impermissible retroactive
action. In a manner analogous to the enactment of section
6501(c)(10), section 6502(a)(1) was amended to extend the
limitations period from 6 years to 10 years if the limitations
period had not expired as of the date the amendment was enacted.
Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec.
11317(a)(1), (c), 104 Stat. 1388-458. In Rocanova v. United
States, 955 F. Supp. 27 (S.D.N.Y. 1990), affd. 109 F.3d 127 (2d
Cir. 1997), the District Court rejected arguments that the
amendment operated with impermissible retroactive effect in
violation of the Due Process Clause, the Equal Protection Clause,
and the Ex Post Facto Clause of the Constitution.

Furthermore, petitioner's argument is similar to an argument
rejected by the U.S. Court of Appeals for the Ninth Circuit, the
court to which an appeal in this case would ordinarily lie. See
Leslie v. Commissioner, 146 F.3d 643, 650-652 (9th Cir. 1998),
affg. T.C. Memo. 1996-86. In Leslie, the Commissioner sought
enhanced interest pursuant to section 6621(c) because of the
taxpayers' use of a straddle transaction. In defining "tax-

---

[8](...continued)
Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952).

motivated transactions" to which the enhanced-interest provision applied, section 6621(c)(3)(A)(iii) included "any straddle (as defined in section 1092(c) without regard to subsection (d) or (e) of section 1092)".  Section 6621 applied to interest accruing after December 31, 1984, even though the transaction giving rise to the underpayment of tax on which interest accrued was entered into before that date, while section 1092 applied to property acquired and positions established by the taxpayers after June 23, 1981.  The taxpayers contended that because their transactions occurred before June 23, 1981, section 1092 did not apply to their transactions, and therefore section 6621(c)(3)(A)(iii), which incorporated the definition in section 1092, did not apply to their transactions either.  Leslie v. Commissioner, supra at 651.

The Court of Appeals rejected the taxpayers' "interesting but ultimately unavailing" argument, finding that the Commissioner was applying section 6621(c), and that the effective date of section 1092 was not determinative of the issue before the court as to the taxpayers' liability for increased interest. In concluding that the taxpayers' argument must fail, the court explained:

> Section 6621(c)(3)(A)(iii) references § 1092 for one
> simple reason:  § 1092 contains what the drafters of
> § 6621 deemed to be a useful definition of "straddle."
> In the interest of expediency, rather than trotting out
> the same exact definition again, they simply cross

referenced § 1092, which a prior Congress had already adopted. * * * [Id.]

In this case section 6501(c)(10) cross-references the definition of "listed transaction" in section 6707A, enacted by the same act of Congress. Nevertheless, the reason for the cross-reference is analogous to that in Leslie. See also Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986). The definition of "listed transaction" provided in section 6707A was useful, and Congress chose to cross-reference the definition for expediency's sake with the effect that the definition in section 6707A was incorporated into section 6501(c)(10), but not its effective date.[9]

III. Whether the Transaction at Issue Is a Listed Transaction

A transaction is a listed transaction if it is substantially similar to one of the types of transactions the IRS has determined to be a tax avoidance transaction and has identified by notice, regulation, or other form of published guidance as a listed transaction. Sec. 6707A(c)(2); sec. 1.6011-4(b)(2), Income Tax Regs. On September 5, 2000, the Commissioner issued Notice 2000-44, 2000-2 C.B. 255, which described Son-of-BOSS

---

[9]We note that sec. 6501(c)(10) is not the only place in the Code in which a cross-reference is made to the definitions of "listed transaction" and "reportable transaction" provided in sec. 6707A(c). E.g., secs. 4965(e), 6111(b), 6112(a), 6404(g), 6662A(d), 6707(d).

transactions and determined that they are listed transactions.

Notice 2000-44, 2000-2 C.B. at 255, includes the following

discussion of that type of transaction:

> These arrangements purport to give taxpayers artificially high basis in partnership interests and thereby give rise to deductible losses on disposition of those partnership interests.

> \*    \*    \*    \*    \*    \*    \*

> In * * * [one example], a taxpayer purchases and writes options and purports to create substantial positive basis in a partnership interest by transferring those option positions to a partnership. For example, a taxpayer might purchase call options for a cost of $1,000X and simultaneously write offsetting call options, with a slightly higher strike price but the same expiration date, for a premium of slightly less than $1,000X.  Those option positions are then transferred to a partnership which, using additional amounts contributed to the partnership, may engage in investment activities.

> Under the position advanced by the promoters of this arrangement, the taxpayer claims that the basis in the taxpayer's partnership interest is increased by the cost of the purchased call options but is not reduced under § 752 as a result of the partnership's assumption of the taxpayer's obligation with respect to the written call options.  Therefore, disregarding additional amounts contributed to the partnership, transaction costs, and any income realized and expenses incurred at the partnership level, the taxpayer purports to have a basis in the partnership interest equal to the cost of the purchased call options ($1,000X in this example), even though the taxpayer's net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. On the disposition of the partnership interest, the taxpayer claims a tax loss ($1,000X in this example), even though the taxpayer has incurred no corresponding economic loss.

There are many similarities between the transaction at issue and the one described in Notice 2000-44, supra. However, the transaction at issue did not involve the purchasing and writing of options. It involved the short sale of securities. Nevertheless, we conclude that the transaction at issue is substantially similar to the one described in Notice 2000-44, supra.

The regulations define the term "substantially similar" as "any transaction that is expected to obtain the same or similar types of tax benefits and that is either factually similar or based on the same or similar tax strategy." Sec. 1.6011-4T(b)(1)(i), Temporary Income Tax Regs., 67 Fed. Reg. 41327 (June 18, 2002). Section 1.6011-4T(b)(1)(ii), Temporary Income Tax Regs., supra, contains the following highly pertinent example illustrating the meaning of "substantially similar" and concluding that the transaction described in Notice 2000-44, supra, and a similar transaction involving short sales are substantially similar.

> Example 1. Notice 2000-44 * * * sets forth a listed transaction involving offsetting options transferred to a partnership where the taxpayer claims basis in the partnership for the cost of the purchased options but does not adjust basis under section 752 as a result of the partnership's assumption of the taxpayer's obligation with respect to the options. Transactions using short sales, futures, derivatives or any other type of offsetting obligations to inflate basis in a partnership interest would be the same as or substantially similar to the transaction described in Notice 2000-44. * * * [Emphasis added.]

The fundamental components of the transaction described in Notice 2000-44, supra, are the generation of funds through the creation of a liability and the contribution of the funds (or the asset purchased with such funds) and the associated liability to the partnership without adjusting the partner's basis for the liability. That is precisely what the Manroes did. They generated funds through the short sale of borrowed Treasury notes and contributed those funds and the obligation to cover the short sale to the partnership. The Manroes claimed bases in their partnership interests which included the short sale proceeds but which were not reduced by the obligation to cover the short sale. They then disposed of their partnership interests and claimed more than $5 million of tax losses even though there was no equivalent economic loss.

Accordingly, we hold that the transaction at issue was substantially similar to the transaction described in Notice 2000-44, supra, and is therefore a listed transaction.

IV.  Section 1.6011-4, Income Tax Regs.

Petitioner argues that section 1.6011-4T, Temporary Income Tax Regs., 67 Fed. Reg. 41327 (June 18, 2002) (the temporary regulation), which requires disclosure of participation in listed transactions, is invalid because it violates Executive Order 12866, 3 C.F.R. 638 (1994) (Executive Order 12866), and the Regulatory Flexibility Act (RFA), 5 U.S.C. secs. 601-612 (1994).

Executive Order 12866 requires that the Office of Management and Budget review proposed "significant regulatory action".  A regulatory assessment of the temporary regulation at issue was not conducted because the Department of the Treasury and the IRS concluded that it was not a "significant regulatory action."  67 Fed. Reg. 41327 (June 18, 2002).  Petitioner argues that the regulation is a significant regulatory action requiring review.  Petitioner's contentions are not persuasive.  Section 10 of Executive Order 12866, 3 C.F.R. at 649, states:

> Nothing in this Executive order shall affect any otherwise available judicial review of agency action. This Executive order is intended only to improve the internal management of the Federal Government and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.

Accordingly, petitioner has no right to challenge compliance with Executive Order 12866.  See Michigan v. Thomas, 805 F.2d 176, 187 (6th Cir. 1986); Trawler Diane Marie, Inc. v. Brown, 918 F. Supp. 921, 932 (E.D.N.C. 1995), affd. without published opinion 91 F.3d 134 (4th Cir. 1996).

In certain situations, the RFA requires that an agency prepare a regulatory flexibility analysis.  RFA, 5 U.S.C. secs. 603-604.  However, a regulation is excepted if the agency certifies that the rule will not have a significant economic impact on a substantial number of small entities.  The Department

of the Treasury and the IRS made that certification in part on the basis of a finding that the time required to prepare and submit a disclosure pursuant to the temporary regulation was not expected to be lengthy. 67 Fed. Reg. 41327 (June 18, 2002). Petitioner argues that the regulation will have a significant economic impact on a substantial number of small entities. Petitioner confuses the disclosure of a tax avoidance transaction with its disallowance. We are not persuaded to override the certification that the submission of a disclosure form with a return in the manner required by the temporary regulation does not have a significant economic impact on a substantial number of small entities.

Petitioner also argues that the temporary regulation is invalid because it does not comply with the notice and comment requirements of the Administrative Procedure Act (APA), 5 U.S.C. sec. 553(b) and (c) (1994). Petitioner contends that if the temporary regulation is invalid, section 6501(c)(10) cannot apply to the partnership or the Manroes because they had no duty to disclose their participation in the transaction at issue. We conclude, however, that the final regulation, section 1.6011-4, Income Tax Regs., validly promulgated on February 28, 2003, in T.D. 9046, 2003-1 C.B. 614, which incorporates the rules of the temporary regulation, controls the outcome of this case.

Some background will be useful. On June 14, 2002, the temporary regulation was amended in two ways that matter to this case: (1) It extended to individuals, trusts, partnerships, and S corporations the requirement to disclose listed transactions, which previously had applied only to corporate taxpayers; and (2) it provided that if a transaction becomes a reportable transaction after the taxpayer has filed the return for the first year in which the transaction affected the taxpayer's or a partner's tax liability, the disclosure statement must be filed as an attachment to the taxpayer's next-filed return (hereinafter the next-return disclosure requirement).[10] 67 Fed. Reg. 41325, 41326 (June 18, 2002).

Also on June 18, 2002, notice was published and comments were sought for the final regulation section 1.6011-4, Income Tax Regs. The text of the proposed regulation was the same as the

---

[10]In this latter regard, the temporary regulation provided:

(d) Time of providing disclosure--(1) * * * If a transaction becomes a reportable transaction (e.g., the transaction subsequently becomes one identified in published guidance as a listed transaction described in (b)(2) of this section * * *) on or after the date the taxpayer has filed the return for the first taxable year for which the transaction affected the taxpayer's or a partner's or a shareholder's Federal income tax liability, the disclosure statement must be filed as an attachment to the taxpayer's Federal income tax return next filed after the date the transaction becomes a reportable transaction (whether or not the transaction affects the taxpayer's or any partner's or shareholder's Federal income tax liability for that year). * * * [67 Fed. Reg. 41328 (June 18, 2002).]

text of the temporary regulation as reissued the same day. Notice of Proposed Rulemaking by Cross-Reference to Temporary Regulations, 67 Fed. Reg. 41360 (June 18, 2002). The effective date of the temporary regulation (and of the proposed regulation by cross-reference) was for "Federal income tax returns filed after February 28, 2000" except that the two amendments described above, among others, were made applicable "to any transaction entered into on or after January 1, 2001." Sec. 1.6011-4T(g), Temporary Income Tax Regs., 67 Fed. Reg. 41328 (June 18, 2002).

On October 22, 2002, the temporary regulation was amended once again, and notice was published and comments were sought for making the temporary regulation final.[11] Notice of Proposed Rulemaking by Cross-Reference to Temporary Regulations, 67 Fed. Reg. 64840 (Oct. 22, 2002). The effective date of the temporary regulation (and of the proposed regulation by cross-reference) was as follows:

> (h) Effective dates. <u>This section applies to Federal income tax returns filed after February 28, 2000</u>. However, paragraphs (a) through (g) of this section [reflecting the new amendments] apply to transactions entered into on or after January 1, 2003. <u>The rules that apply with respect to transactions entered into on or before December 31, 2002, are contained in § 1.6011-4T in effect prior to January 1, 2003</u> (see 26 CFR part 1 revised as of April 1, 2002, and 2002-28 I.R.B. 90 (see § 601.601(d)(2) of this

---

[11]This version of the temporary regulation contained new amendments that are not germane to the present discussion. See 67 Fed. Reg. 64799 (Oct. 22, 2002).

chapter)).  [67 Fed. Reg. 64805 (Oct. 22, 2002);
emphasis added.]

The final regulation, published February 28, 2003, reflected

various amendments to the temporary regulations in response to

public comments.  T.D. 9046, <u>supra</u>.  It retained a provision

substantially similar to the next-return disclosure requirement

of the temporary regulation.[12]  The final regulation carried this

effective date:

> (h) Effective dates.  <u>This section applies to
> federal income tax returns filed after February 28,
> 2000</u>.  However, paragraphs (a) through (g) of this
> section apply to transactions entered into on or after
> February 28, 2003.  All the rules in paragraphs (a)
> through (g) of this section may be relied upon for
> transactions entered into on or after January 1, 2003,
> and before February 28, 2003.  Otherwise, <u>the rules
> that apply with respect to transactions entered into
> before February 28, 2003, are contained in §1.6011-4T
> in effect prior to February 28, 2003</u> (see 26 CFR part 1
> revised as of April 1, 2002, 2002-28 I.R.B. 90, and
> 2002-45 I.R.B. 818 (see §601.601(d)(2) of this
> chapter)).  [<u>Id.</u>, 2003-1 C.B. at 622; emphasis added.]

---

[12]The final regulation provided in par. (e)(2):

(2) Special rules--(i) Listed transactions.  If a
transaction becomes a listed transaction after the
filing of the taxpayer's final tax return reflecting
either tax consequences or a tax strategy described in
the published guidance listing the transaction (or a
tax benefit derived from tax consequences or a tax
strategy described in the published guidance listing
the transaction) and before the end of the statute of
limitations period for that return, then a disclosure
statement must be filed as an attachment to the
taxpayer's tax return next filed after the date the
transaction is listed.  [T.D. 9046, 2003-1 C.B. 614,
621.]

Pursuant to this provision the final regulation applies, as it says, to tax returns filed after February 28, 2000, and the rules applicable to transactions entered into before January 1, 2003, are determined under the final regulation by reference to the rules of the temporary regulation.

The final regulation suspended the temporary regulation as of February 28, 2003.  T.D. 9046, 2003-1 C.B. at 622.[13] Consequently, the rules in the temporary regulation have continuing force and effect only by virtue of their incorporation into the final regulation.  The question is whether the final regulation ran afoul of the APA by incorporating the rules of the temporary regulation by cross-referencing them.  The answer is clearly no.  The final regulation's use of a cross-reference to incorporate the temporary regulation rules creates no more of a procedural deficiency under the APA than if the final regulation had reproduced the rules of the temporary regulation word for word.

Notice 2000-44, 2000-2 C.B. 255, published more than a year before the Manroes entered into their transaction, identified

---

[13]In addition to stating that the final regulation issued on Feb. 28, 2003, superseded the temporary regulations, T.D. 9046, 2003-1 C.B. at 622, also summarizes the effective date of the final regulation by stating that it applies "to transactions entered into on or after Feb. 28, 2003."  Clearly, this shorthand description does not alter the actual effective-date provision contained in par. (h) of the final regulation.  Rather, the sense of this shorthand description is that as of Feb. 28, 2003, the final regulation replaced the temporary regulation.

that type of transaction as a listed transaction.  On June 14, 2002, the Secretary published a notice of proposed rulemaking, containing proposed regulations requiring disclosure of such a transaction; they embodied the provisions of the temporary regulation issued the same day.  This notice of proposed rulemaking provided notice of, among other things:  (1) The disclosure requirement as applying to both corporate and noncorporate taxpayers; and (2) the next-return disclosure requirement.  The Manroes' transaction first became a reportable transaction on February 28, 2003, when the final regulation was issued.  As of that date, the Manroes had already filed their 2001 return but had not yet filed their 2002 return. Consequently, the final regulation, incorporating the rules of the temporary regulation, required them to attach a statement to their 2002 return disclosing the listed transaction.  When they filed their 2002 return on October 15, 2003--more than 7 months after the final regulation was issued--they failed to include such a statement.

Section 6501(c)(10) provides that if a taxpayer fails to include "on any return or statement for any taxable year" any information with respect to a listed transaction (as defined in section 6707A(c)(2)) which is required under section 6011, the time for assessing any tax "with respect to such transaction" remains open.  Section 6501(c)(10) is effective for tax years

with respect to which the period for assessing a deficiency did not expire before October 22, 2004.  As of that date, the 3-year period of limitations remained open with respect to the Manroes' 2001 return, which they filed on October 15, 2002.  Consequently, because the Manroes failed to provide the required statement when they filed either their 2001 or 2002 return, the period of limitations remains open with respect to any tax in 2001 and 2002 with respect to the transaction in question.

Under section 6501(c)(10), it is of no consequence that the transaction in question became a reportable transaction after the transaction had already occurred.[14]  The legislative history expressly contemplated such a result.  It states:  "For example, if a taxpayer engaged in a transaction in 2005 that becomes a listed transaction in 2007 and the taxpayer fails to disclose such transaction in the manner required by Treasury regulations, then the transaction is subject to the extended statute of limitations."[15]  H. Conf. Rept. 108-755, supra at 382.  In any

---

[14]Actually, as previously discussed, the Manroes' transaction was a listed transaction under Notice 2000-44, supra, long before they entered into it.  Because sec. 6501(c)(10) cross-references the definition of "listed transaction" under sec. 6707A(c)(2), which makes a listed transaction a species of "reportable transaction", the transaction became a "listed transaction" for purposes of sec. 6501(c)(10) when the obligation to report it arose; i.e., no later than upon the issuance of the final regulation.

[15]In a footnote to this statement, the legislative history also states:

(continued...)

event, as previously discussed, the force and effect of the final regulation was entirely prospective, requiring the Manroes to disclose the transaction in a statement with their 2002 return, which had not yet been filed.

To recapitulate, the Manroes' obligation to disclose their transaction arose upon the issuance of the final regulation. The final regulation, including its provisions incorporating the rules of the temporary regulation, was subject to notice and comment and is valid. After the issuance of the final regulation, the Manroes were required prospectively to report the listed transaction in a statement attached to their 2002 tax return. They failed to do so. Consequently, the period of limitations remains open under section 6501(c)(10) for 2001.

---

[15](...continued)
If the Treasury Department lists a transaction in a year subsequent to the year in which a taxpayer entered into such transaction and the taxpayer's tax return for the year the transaction was entered into is closed by the statute of limitations prior to the date the transaction became a listed transaction, this provision does not re-open the statute of limitations with respect to such transaction for such year. However, if the purported tax benefits of the transaction are recognized over multiple tax years, the provision's extension of the statute of limitations shall apply to such tax benefits in any subsequent tax year in which the statute of limitations had not closed prior to the date the transaction became a listed transaction. [H. Conf. Rept. 108-755, at 593 n.482 (2004).]

The Court, in reaching its holding, has considered all arguments made and concludes that any arguments not mentioned above are moot, irrelevant, or without merit.

To reflect the foregoing,

> An order will be issued granting respondent's motion for partial summary judgment and denying petitioner's cross-motion for partial summary judgment.

Reviewed by the Court.

COLVIN, COHEN, WELLS, VASQUEZ, GALE, THORNTON, MARVEL, GOEKE, WHERRY, KROUPA, and PARIS, JJ., agree with this majority opinion.

GUSTAFSON and MORRISON, JJ., did not participate in the consideration of this opinion.

THORNTON, J., concurring:  I agree with the majority opinion and write separately to address possible jurisdictional concerns.

It has been suggested that in a partnership-level proceeding this Court lacks jurisdiction to consider a partner's assertion that the period of limitations has expired for assessing against that partner tax attributable to partnership items.  This is because, under this view, the issue does not represent a partnership item or affirmative defense.  Subsection (d)(1) of section 6226, however, expressly confirms this Court's jurisdiction to consider a partner's assertion that "the period of limitations for assessing any tax attributable to partnership items has expired with respect to" the partner.  In the light of this statutory provision, it matters little whether the issue might be characterized as a partnership item or an affirmative defense or something else.

Some might construe subsection (d)(1) narrowly to grant this Court jurisdiction to determine which partners have an interest in the outcome of the proceedings and nothing more.  That is not, however, what the statute provides.  In any event, to decide whether the assessment of tax attributable to partnership items is time barred for purposes of determining which partners have an interest in the outcome of the proceeding is, necessarily, to decide that issue for all purposes.

The context and history of subsection (d)(1) of section 6226 are instructive. Under the general rule of subsection (c) of section 6226, each person who is a partner in a partnership "shall be treated as a party" to an action brought to review partnership adjustments and the Court "shall allow each such person to participate in the action." Subsection (d)(1) modified this general rule by providing that subsection (c) shall not apply to a partner "after the day on which" the period has expired for assessing against the partner any tax attributable to the partnership. Before the addition in 1997 of the flush language of subsection (d)(1), there was potential circularity in the interaction of subsections (c) and (d)(1): until such time as the Court might decide that the limitations period had expired, the partner was allowed to participate in the proceeding pursuant to the general rule of subsection (c), but if the Court ultimately decided the limitations issue in the partner's favor, then subsection (d)(1) would have seemingly nullified ab initio the partner's participation in the proceeding. This situation gave rise to a question whether a partner had "standing" to assert that the statutory period of limitations had expired with respect to that partner. H. Rept. 105-148, at 594 (1997), 1997-4 C.B. (Vol. 1) 319, 916.

To resolve this problem, in 1997 subsection (d)(1) was amended to provide that a partner "shall be permitted to

participate" in the partnership proceeding "solely" for the purpose of asserting that the limitations period for assessing tax has expired with respect to that partner. Focusing on the word "solely", some have suggested that the statute permits a partner to participate in the partnership proceeding by asserting the limitations bar only if that is the sole issue asserted by the partner. Nothing in the flush language of subsection (d)(1), however, alters or affects the operation of the general rule of subsection (c), which entitles a partner to participate fully in the action until such time as the Court might decide that the limitations period has expired with respect to the partner--an issue that might not be finally decided until the final appeal of such a ruling. Being uncertain of the prospects of ultimately prevailing on the limitations period issue, a partner would be well advised also to raise any alternative assertions which the partner would be entitled to raise as a participant in the action.

In the light of these considerations, the word "solely" in the flush language of subsection (d)(1) cannot fairly be construed to mean that a partner is entitled to assert the limitations bar only if the partner relinquishes all alternative assertions. Rather, the statutory language confirms a partner's ability to raise on a stand-alone basis an issue that the partner

otherwise would be entitled to raise in conjunction with other issues.

Some seem to suggest that the Court's jurisdiction to consider a partner's assertion of a limitations bar should depend upon whether the partner asserts the issue for all the partner's affected years, in which case the Court would have jurisdiction to consider the assertion, or for fewer than all the partner's affected years, in which case the Court would lack jurisdiction. Under this view, our jurisdiction would apparently be unquestioned if the Manroes had asserted the limitations bar for both tax years 2001 and 2002 but otherwise does not exist. Suffice it to say that it would be anomalous for this Court's jurisdiction to depend upon the litigating tactics of well-advised (or poorly advised) partners.

In any event, even in a circumstance in which a partner asserts the limitations bar for all affected years, as everyone acknowledges a partner would be entitled to do, the Court might well decide that the limitations period had expired with respect to fewer than all of the partner's affected years. In that eventuality, the partner would remain a party to the action, but this circumstance would not disturb the Court's exercise of jurisdiction in deciding that the limitations period had expired for some particular year or years.

The Court's jurisdiction to consider the limitations issue in a partnership proceeding is made more evident in the context of a readjustment petition filed by a partner. The flush language of subsection (d)(1) provides that a partner may file a readjustment petition under section 6226(b) or (d)(2) solely for the purpose of asserting that the period of limitations attributable to partnership items has expired with respect to the partner. If the partner filed such a readjustment petition to raise this sole assertion, that might well be the only issue presented in the action.[1] In such a case, it is not meaningful to say that the Court has jurisdiction to consider this issue only to determine whether the partner is a party to the action, since but for the partner's bringing the action, there would be no action.[2] The only conceivable purpose of the action would be

_____

[1]Sec. 6226(b) provides that if the tax matters partner (TMP) does not file a readjustment petition, certain other partners may file petitions for readjustment of the partnership items. If more than one such partner brings an action under subsec. (b), the first such action brought goes forward in the Tax Court. Sec. 6229(b)(2). If the TMP has not brought an action and an eligible partner brings the sole action under subsec. (b) solely for the purpose of asserting that the limitations period had expired with respect to that partner, as permitted by the flush language of subsec. (d), there would be no other issue presented in that action.

[2]This analysis is complicated but not altered by the fact that pursuant to sec. 6226(d)(2), no partner may file a readjustment petition "unless such partner would (after the application of paragraph (1) of this subsection) be treated as a party to the proceeding." Except for the provision in the flush language of subsec. (d)(1), which cured the problem for all

(continued...)

to assert that the limitations period had expired for that partner.  By expressly permitting the partner to raise this issue pursuant to section 6226(b), the statute thereby effectively treats it as a partnership item within the meaning of section 6226(b)(1).

The same sentence of subsection (d)(1) that permits a partner to raise the limitations bar in a readjustment petition also permits, without differentiation, a partner to participate in an action brought by the tax matters partner or another eligible partner.  There is no reason to think that Congress intended that a partner's ability to assert the limitations bar would be any more constrained in the latter circumstance than it would be in the former.  In the final analysis, it would appear that the legislature perceived that a partner's assertion of a limitations bar is so closely intertwined with the issue of whether the partner has an interest in the outcome of the partnership proceeding that the partner should be allowed to raise the assertion during the proceeding without regard to whether it might otherwise be regarded as a partner-level item. That result is consistent with the general legislative objective

---

² (...continued)
purposes, this provision would give rise to the same sort of circularity previously noted with regard to the interaction of subsecs. (c) and (d)(1).

of centralizing resolution of disputes over partnership adjustments.

Moreover, we note that in the case before us the issue of whether the underlying transaction is a "listed transaction" for purposes of section 6501(c)(10) must be decided according to the nature of transactions that occurred at the partnership level and, thus, could be considered a partnership item. See sec. 6231(a)(3); sec. 301.6231(a)(3)-1, Proced. & Admin. Regs. (If the transaction was a listed transaction, the partnership was required to file a disclosure statement.) Whether the limitations period remains open may also be considered a partnership item insofar as the partnership's failure to file a disclosure statement operates to extend the limitations period under section 6501(c)(10) for assessing any tax with respect to the transaction. The duty to file a disclosure statement arises with respect to every partnership that participated, directly or indirectly, in a reportable transaction. Sec. 1.6011-4T(a)(1), Temporary Income Tax Regs., 67 Fed. Reg. 41327 (June 18, 2002). The partnership in this case participated directly in the transaction. The record shows that the partnership filed no disclosure statement with its 2001 or 2002 return. Consequently, the period of limitations remains open under section 6501(c)(10) for both the Manroes' 2001 and 2002 tax years. This conclusion provides an alternative basis for this Court's jurisdiction to

consider the Manroes' assertion of the limitations bar in this partnership-level proceeding.[3]

It might be argued that the approach of the majority opinion could give rise to unexpected preclusive effects in future proceedings involving partners who could have but did not raise the issue of the limitations bar in the partnership-level proceeding. Any such argument ignores well-established caselaw holding that a statute of limitations defense as pertains to a final notice of partnership adjustments should be prosecuted in the context of the partnership-level proceeding rather than in a partner-level proceeding. See Crowell v. Commissioner, 102 T.C. 683, 693 (1994); McConnell v. Commissioner, T.C. Memo. 2008-167 (and cases cited therein).[4] In any event, there should be no unanticipated preclusive effects resulting from the case before us, since the only partners directly affected by the disputed partnership adjustments are the Manroes, who have in fact

---

[3]It is true, as Judge Halpern notes, that the parties have not argued this point. Dissenting op. p. 68. But then again, neither party has questioned this Court's jurisdiction.

[4]In collection actions brought pursuant to sec. 6330(d) the caselaw is similarly well established that the assertion of a limitations bar on assessment constitutes a challenge to the underlying liability, which is properly at issue in the collection proceeding only if the taxpayer has had no prior opportunity to dispute it. See Hoffman v. Commissioner, 119 T.C. 140, 145 (2002); Boyd v. Commissioner, 117 T.C. 127, 130 (2001).

asserted the limitations bar in this proceeding.[5]  The majority

opinion does not purport to decide possible preclusive effects

arising in other circumstances in other actions.

It might be suggested that entertaining partner-level

assertions of a limitations bar raises the specter that

partnership-level proceedings may be made more complex or time

consuming by requiring the Court to decide collateral issues

relating to such assertions.  Without question, however, the

statute requires us to decide these issues where a partner

asserts the limitations bar with respect to <u>all</u> the partner's

affected years.  It is not such a great leap that the Court

should also consider such issues where a partner asserts the

limitations bar with respect to <u>fewer</u> than all affected years.

After all, these issues have to be decided somewhere.

Ultimately, it would serve no one's interests (and undoubtedly

would surprise the parties, who have not questioned our

jurisdiction) for this Court to decline to address the Manroes'

assertion of the limitations bar and instead to require the

---

[5]Apart from the Manroes, the only partners in the
partnership are two trusts that the Manroes created for the
benefit of their children.  Because these trusts contributed only
cash to the partnership, they have no basis adjustments to be
adjudicated, now or later.

parties and this or some other court to expend additional time and resources addressing the issue in some future proceeding.

COLVIN, COHEN, WELLS, VASQUEZ, GALE, MARVEL, HAINES, GOEKE, WHERRY, KROUPA, and PARIS, <u>JJ</u>., agree with this concurring opinion.

HALPERN, J., dissenting:  In addition to the question regarding the effect of certain final and temporary regulations, this case presents a novel question:  Does the Court have authority in a partnership-level proceeding to decide whether the statute of limitations bars the assessment of a resulting computational adjustment?  Without the aid of any input from the parties on that question, in a few cursory paragraphs, the majority holds that we do have that authority.  See majority op. pp. 11-13.  Because the majority has failed to convince me that in this partnership-level proceeding we have that authority, I respectfully dissent.

I.  <u>Introduction</u>

The Manroes began this partnership-level proceeding after respondent issued an FPAA for the partnership's 2001 year.  The parties agree that, if we sustain the partnership adjustments, there will be computational adjustments to the Manroes' 2001 and 2002 taxable years.  The parties also agree that the Manroes' 2002 year is open.

The motions for partial summary judgment ask us to decide whether section 6501(a) bars the assessment of any computational adjustment for the Manroes' 2001 year.  In a partnership-level proceeding, the Court has authority to decide (1) partnership items (and related penalties, additions to tax and the like), see sec. 6221; (2) affirmative defenses, see Rule 39; and (3) whether

a partner is not a party because he has no interest in the outcome of the proceeding, see sec. 6226(c) and (d).

The majority does not suggest that the question before us concerns either a partnership item (or related penalty, addition to tax or the like) or an affirmative defense.  Rather, the majority cites section 6226(c) and (d) and three cases involving those provisions.  In response to the majority, I first briefly explain why the question is not an affirmative defense in this partnership-level proceeding; second, I discuss the statute; and, third, I review the caselaw.  Fourth, before addressing the effect of the majority opinion, I address Judge Thornton's three arguments that the question before us involves a partnership item.  Finally, I offer my conclusion.

## II.  Affirmative Defenses

An affirmative defense is an "assertion of facts and arguments that, if true, will defeat the * * * [cause of action], even if all the allegations * * * are true."  Black's Law Dictionary 482 (9th ed. 2009).  Rule 39 provides a few examples of affirmative defenses: "res judicata, collateral estoppel, estoppel, waiver, duress, fraud, and the statute of limitations."  One affirmative defense to an FPAA is that the FPAA cannot affect any open partner year.  See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 534-535 (2000) ("However, if partnership-level proceedings are commenced after

the time for assessing tax against the partners has expired, the proceedings will be of no avail because the expiration of the period for assessing tax against the partners, if properly raised, will bar any assessments attributable to partnership items."); see also infra sec. IV.B.1. of this separate opinion.

The Manroes have assigned error to the FPAA, yet they cannot avoid addressing its merits simply by showing that section 6501(a) bars the assessment of any computational adjustment for the Manroes' 2001 year. The reason is that the Manroes' 2002 year is open. If they do not address the merits of the FPAA, we shall be compelled to enter decision clearing the way for respondent to make a computational adjustment increasing their tax liability for 2002. That is, even if section 6501(a) bars the assessment of any computational adjustment for the Manroes' 2001 year, we must reach the merits of the FPAA regardless. The argument that section 6501(a) bars the assessment of any resulting tax liability for the Manroes' 2001 year does not, therefore, constitute an affirmative defense to the FPAA.[1]

The Manroes are not without recourse as to that argument, however, because they may raise it as an affirmative defense in any subsequent partner-level collection action or refund suit

---

[1]Although the majority does not suggest that the sec. 6501(a) question before us concerns an affirmative defense, I believe that the majority has impermissibly allowed the parties to place before the Court a partner-level affirmative defense that has no place in this partnership-level proceeding.

with respect to their 2001 year.  At the partner level, that argument would be an affirmative defense because, at that level, each year is a separate cause of action with respect to which the partner can prevail by showing the year is closed.

III.  Jurisdiction To Hear a Claim That a Partner Has No
      Interest in the Outcome of the Proceeding

Section 6226 provides for the judicial review of an FPAA. If an action for review is brought, section 6226(c) provides that each person who was a partner in the partnership at any time during any partnership year addressed by the FPAA is (1) treated as a party to the action and (2) allowed to participate in the action.  Subparagraph (B) of section 6226(d)(1) deprives a partner of that status and that right if he has no interest in the outcome of the proceeding; i.e., "after the day on which * * * the period within which any tax attributable to * * * [the partnership items of the partner] may be assessed against that partner expired."  Importantly, the sentence following subparagraph (B) of section 6226(d)(1) (the flush-language sentence) provides in pertinent part:

> Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted to participate in such action (or file a readjustment petition * * *) solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion.

The flush-language sentence affirms our jurisdiction to treat a partner as a party for the limited purpose of determining that he is not otherwise a party (i.e., for determining that he lacks an interest in the outcome of the proceeding).[2]  It must be read in context.  Congress added it in 1997, effective for partnership years ending after August 5, 1997, as a means of "Clarifying the Tax Court's jurisdiction".  H. Rept. 105-148, at 594 (1997), 1997-4 C.B. (Vol. 1) 319, 916.  The House report describes the jurisdictional question as follows:

> For a partner * * * to be eligible to file a petition for redetermination of partnership items in any court or to participate in an existing case, the period for assessing any tax attributable to the partnership items of that partner must not have expired.  Since such a partner would only be treated as a party to the action if the statute of limitations with respect to them [sic] was still open, the law is unclear whether the partner would have standing to assert that the statute of limitations had expired with respect to them [sic].

---

[2]A partner may, of course, plead alternatively that he has no interest in the outcome of the proceeding and that the adjustments in the FPAA are in error.  See Rule 31(c) ("A party may state as many separate claims or defenses as the party has regardless of consistency or the grounds on which based.").

<u>Id.</u>[3]  The House report states that Congress intended the flush-language sentence as nothing more than a clarification of subparagraph (B) of section 6226(d)(1).  As a clarification, the flush-language sentence added nothing of substance to section 6226(d)(1)(B).[4]  Congress added the flush-language sentence simply to address the narrow jurisdictional uncertainty identified in the House report.[5]

---

[3]The disagreement in number between the relative pronoun "them" and its antecedent "partner" may indicate the committee's understanding that a partner (or group of them) might file a petition or participate not only to argue individually that no year was open to a computational adjustment but also to argue the statute of limitations as an affirmative defense; i.e., that the case should be decided in favor of the partners because the statute of limitations had run its course with respect to <u>all</u> partners.  See <u>Columbia Bldg., Ltd. v. Commissioner</u>, 98 T.C. 607, 611 (1992) (holding for the partners on that ground).

[4]If the flush-language sentence is, as the House report states, a mere clarification, then, before its addition in 1997, the Court must have had the authority to determine whether a partner was a party to a partnership-level proceeding or to consider the statute of limitations as an affirmative defense.  And, indeed, the Court did.  See <u>Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner</u>, 114 T.C. 533, 535 n.4 (2000) (citing the flush-language sentence but noting that it did not apply to the partnership year before us); <u>Columbia Bldg., Ltd. v. Commissioner</u>, <u>supra</u> (preceding the addition of the flush-language sentence, and holding that partners may litigate a statute of limitations defense with respect to all partners).

[5]Recognizing that a partner may always make alternative arguments, see <u>supra</u> note 2, Judge Thornton surmises that the flush-language sentence simply confirms that, if a partner wishes "to assert the limitations bar" as his sole argument, he may do so.  Concurring op. p. 39.  That, however, is not the point of the flush-language sentence.  Rather, the flush-language sentence answered a jurisdictional question:  How could a partner participate in (or commence) a partnership-level proceeding for

(continued...)

The flush-language sentence makes clear that the Court has jurisdiction to decide a partner's claim that he has no interest in the outcome of a partnership-level proceeding (and perhaps that no partner has any interest therein[6]), and it permits nothing more.[7] The history of that sentence demonstrates its narrow purpose. A partner who concedes that he has an interest in the outcome of the proceeding is a party to it and has no recourse to section 6226(d)(1).

The Manroes concede they have an interest in the outcome of this partnership-level proceeding because they concede that the partnership adjustments in dispute will affect their 2002 year, which they concede is open; i.e., they concede that "the period

---

[5](...continued)
the purpose of arguing that, because the period of limitations had run, he was not a party thereto? Generally, a statute of limitations claim is not equivalent to a claim that one is not a party to the action--it is an affirmative defense. A partner who makes a successful sec. 6226(d)(1)(B) claim, however, abjures his status as a party; the Court, for that reason, might appear to lack jurisdiction to allow him to participate at all (even for the limited purpose of establishing that he cannot participate). The flush-language sentence ensures that the Court has jurisdiction to hear a partner's claim that (in effect) the Court has no jurisdiction over him.

[6]See supra note 3.

[7]A partner may wish to establish that he is not a party to lessen the risk that, in a subsequent collection action or refund suit, the Commissioner could successfully defend on the ground that the partner is estopped from challenging the partnership adjustments leading to the computational adjustments. See, e.g., Katchis v. United States, 84 AFTR 2d 99-5503, 99-2 USTC par. 50,744 (S.D.N.Y. 1999).

within which <u>any tax</u> attributable to * * * partnership items may be assessed" against them is still open.  See sec. 6226(d)(1)(B) (emphasis added).  Indeed, the Manroes do not deny that they are parties to this proceeding.  Section 6226(d)(1) is therefore not relevant to the inquiry before us.[8]

---

[8]That conclusion does not, as Judge Thornton believes (concurring op. p. 40), suggest an anomaly.  If a partner avers that, of the years affected by partnership items, some, <u>but not all</u>, are closed, then he concedes he is a party.  If even one year is open, then the partner has an interest in the outcome of the proceeding; he has failed to aver facts necessary to prove that he is not a party under sec. 6226(d)(1)(B).  The flush-language sentence confirms our jurisdiction to determine that a partner is not a party to a partnership-level proceeding but does not go further to give us authority to consider a <u>party's</u> partner-specific defense.  See discussion of <u>New Millennium Trading, L.L.C. v. Commissioner</u>, 131 T.C. ___ (2008), <u>infra</u> sec. IV.C.1. of this separate opinion.

Moreover, we need not necessarily decide the status of <u>all</u> a partner's years affected by partnership items even if, by averring that all those years are closed, he properly raises the question of whether he is a party to the partnership-level proceeding.  Judge Thornton states:  "[T]o decide whether the assessment of tax attributable to partnership items is time barred for purposes of determining which partners have an interest in the outcome of the proceeding is, necessarily, to decide that issue for all purposes."  Concurring op. p. 37.  If a partner argues that he is not a party under sec. 6226(d)(1)(B), the Court must search for an open year.  If the Court finds no open year, then the partner is not a party; moreover, I assume collateral estoppel would prevent the Commissioner from arguing otherwise in a later action.  The moment the Court finds <u>one</u> open year, however, the partner is a party and the inquiry is done; the Court would not need to find (and judicial restraint would counsel against finding) the status of any other year.

IV. <u>Caselaw</u>

The majority cites three cases in three short paragraphs. See majority op. pp. 12-13. I discuss all three as well as a few others.

A. <u>Cases That Reaffirm Our Authority To Determine Which Partners Are Parties</u>

<u>PCMG Trading Partners XX, L.P. v. Commissioner</u>, 131 T.C. ___ (2008), involved five partners who filed a timely petition as a 5-percent group under section 6226(b)(1) after the tax matters partner had failed to file a petition. <u>Id.</u> at ___ (slip op. at 4). Because they were uncertain whether the Court would uphold the petition of the 5-percent group, the five partners also all filed separate petitions asserting, as the lead petition had, that under section 6226(d)(1)(B) none was a party to the proceeding. <u>Id.</u> at ___ (slip op. at 4-5, 10-12). <u>PCMG</u> concerned the Commissioner's motion to dismiss those five petitions (and one other). <u>Id.</u> at ___ (slip op. at 2-3). After establishing that the Court had jurisdiction over the petition of the 5-percent group, the Court was bound by section 6226(b)(2) and (4) to dismiss all subsequent actions. <u>Id.</u> at ___ (slip op. at 9-10). Thus, the holding of <u>PCMG</u> does not concern section 6226(c) and (d) in any way relevant here.

Nonetheless, the discussion in <u>PCMG</u> of section 6226(c) and (d) supports my analysis. The majority quotes <u>PCMG</u> note 9:

> Generally the Court's jurisdiction in a partnership
> proceeding is restricted to determining "partnership
> items".  Sec. 6226(f); <u>Petaluma FX Partners, LLC v.
> Commissioner</u>, 131 T.C. ___, ___ (2008) (slip op. at
> 11-12).  However, our jurisdiction over whether the
> period of limitations has expired as to individual
> partners presents an exception since the expiration of
> the period of limitations can depend on facts that are
> peculiar to the individual partners.  See <u>Rhone-Poulenc
> Surfactants & Specialties, L.P. v. Commissioner</u>, 114
> T.C. 533 * * *.  As we observed therein:
>
> "in 1997, Congress recognized that the periods for
> assessing tax against individual partners may vary from
> partner to partner and specifically provided that an
> individual partner will be permitted to participate as
> a party in the partnership proceeding 'solely for the
> purpose of asserting that the period of limitations for
> assessing any tax attributable to partnership items has
> expired with respect to such person'.  See the last
> sentence of section 6226(d)(1)(B), added to the Code by
> the Taxpayer Relief Act of 1997, Pub. L. 105-34,
> section 1239(b), 111 Stat. 1027, effective for years
> ending after August 5, 1997.  [<u>Id.</u> at 546; fn. ref.
> omitted.]"

<u>Id.</u> at ___ n.9 (slip op. at 12-13).  To restate:  Partnership

items are those items required to be taken into account for the

partnership's taxable year to the extent that those items are

more appropriately determined at the partnership level than at

the partner level.  Sec. 6231(a)(3).  By contrast, an inquiry

under section 6226(d)(1) to determine whether a partner is a

party will in most circumstances depend on facts that are

peculiar to the individual partner; for that reason, in most

circumstances, that inquiry would seem inappropriate at the

partnership level.  Nonetheless, concludes <u>PCMG</u> note 9, section

6226(d)(1)(B) grants the Court the authority to make such a

partner-specific inquiry and to decide whether the period of limitations for a partner has run in the context of determining whether that partner is a party.

Again, because the Manroes concede they are parties to this partnership-level proceeding, section 6226(d)(1) is not relevant. PCMG does not support the majority.

    B.  Cases Concerning the Timeliness of the FPAA

       1.  Cases in Which the FPAA Is Untimely

The majority cites Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra, for the proposition that in a partnership-level proceeding the partners may assert that the period of limitations for assessing any tax attributable to partnership items has expired.  See majority op. p. 12.  That is, the majority cites Rhone-Poulenc for its recitation of the flush-language sentence in section 6226(d)(1), which permits a partner to argue that he is not a party to a partnership-level proceeding.  Yet Rhone-Poulenc supports my analysis of section 6226(c) and (d).  Rhone-Poulenc simply involved the special case in which every partner argues that, under section 6226(d)(1)(B), he is not a party to a partnership-level proceeding.  We concluded that, if the statute of limitations barred assessment of every computational adjustment resulting from every partnership adjustment, reaching the merits of the FPAA would be of "no avail".  See Rhone-Poulenc Surfactants & Specialties, L.P.

v. Commissioner, 114 T.C. at 534-535; cf. supra sec. II. of this separate opinion (describing the argument in Rhone-Poulenc as in effect an affirmative defense to the FPAA). Rhone-Poulenc involved an argument that no partner was a party to the partnership-level proceeding and does not support the majority.

### 2. Cases in Which the FPAA Is Timely

The majority cites Curr-Spec Partners, L.P. v. Commissioner, T.C. Memo. 2007-289, affd. 579 F.3d 391 (5th Cir. 2009), but does not explain for what proposition. The reason, I imagine, is that Curr-Spec does not in fact involve an inquiry into whether any partner year was open or closed. Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007), and G-5 Inv. Pship. v. Commissioner, 128 T.C. 186 (2007), control Curr-Spec, and all three involve the same fact pattern. In each case, the Commissioner conceded that the statute of limitations barred assessment against any partner of any computational adjustment for the partner year corresponding to the partnership year for which the FPAA was issued. The taxpayers argued that, for that reason, the Commissioner could not assess any computational adjustment for any subsequent year, even though the taxpayers conceded that the subsequent years were open. The Court rejected the taxpayers' argument.

Those three cases did not involve any partner-specific inquiry into the statute of limitations, however, because the

parties <u>agreed</u> which years were open and which closed. The question, rather, was whether the FPAA was timely. The Court held that it was timely because, even assuming the FPAA had been issued for a partnership year congruent to closed partner years, if the FPAA could affect an open partner year, then the Court could reach its merits. See <u>supra</u> sec. II. of this separate opinion. Those three cases do not support the majority.

### C. <u>Other Cases That Support My Analysis</u>

#### 1. <u>New Millennium Trading, L.L.C. v. Commissioner</u>

The specific question we consider today is whether in a partnership-level proceeding a partner who concedes he is a party may argue that the statute of limitations bars the assessment of a resulting computational adjustment. The broader question might be whether in a partnership-level proceeding a partner may raise a partner-specific defense. In the penalty context, we recently answered the latter question with a resounding "no". See <u>New Millennium Trading, L.L.C. v. Commissioner</u>, 131 T.C. ___ (2008).

In <u>New Millennium Trading</u>, the taxpayer moved for partial summary judgment, asking the Court to hold either invalid or inapplicable the regulation barring a partner from raising partner-level defenses in a partnership-level proceeding. We denied the motion in both respects, see <u>id.</u> at ___ (slip op. at

2), thereby upholding section 301.6221-1T(c) and (d), Temporary

Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999).[9]

---

[9]Although temporary during the year at issue in New
Millennium Trading, L.L.C. v. Commissioner, 131 T.C. ___ (2008),
sec. 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., 64
Fed. Reg. 3838 (Jan. 26, 1999), was made final and applicable to
partnership taxable years beginning on or after Oct. 4, 2001.
Sec. 301.6221-1(f), Proced. & Admin. Regs.

Sec. 301.6221-1(c), Proced. & Admin. Regs. ("Penalties
determined at partnership level."), provides:

   Any penalty, addition to tax, or additional amount that
   relates to an adjustment to a partnership item shall be
   determined at the partnership level.  Partner-level
   defenses to such items can only be asserted through
   refund actions following assessment and payment.
   Assessment of any penalty, addition to tax, or
   additional amount that relates to an adjustment to a
   partnership item shall be made based on
   partnership-level determinations.  Partnership-level
   determinations include all the legal and factual
   determinations that underlie the determination of any
   penalty, addition to tax, or additional amount, other
   than partner-level defenses specified in paragraph (d)
   of this section.

Sec. 301.6221-1(d), Proced. & Admin. Regs. ("Partner-level
defenses."), provides:

   Partner-level defenses to any penalty, addition to tax,
   or additional amount that relates to an adjustment to a
   partnership item may not be asserted in the
   partnership-level proceeding, but may be asserted
   through separate refund actions following assessment
   and payment.  See section 6230(c)(4).  Partner-level
   defenses are limited to those that are personal to the
   partner or are dependent upon the partner's separate
   return and cannot be determined at the partnership
   level.  Examples of these determinations are whether
   any applicable threshold underpayment of tax has been
   met with respect to the partner or whether the partner
   has met the criteria of section 6664(b) (penalties
   applicable only where return is filed), or section

(continued...)

We began by stating unequivocally that "a partner cannot raise partner-level defenses in a TEFRA proceeding". <u>New Millennium Trading, L.L.C. v. Commissioner</u>, <u>supra</u> at ___ (slip op. at 15). We explained that "[t]he TEFRA structure enacted by Congress does not permit a partner to raise partner-level defenses during a partnership-level proceeding", <u>id.</u> at ___ (slip op. at 17), and we held that "sections 6221, 6230(c)(1), and 6230(c)(4), when read in conjunction, make clear that Congress intended for partners to raise partner-level defenses during a refund action after the partnership proceeding", <u>id.</u> at ___ (slip op. at 22). We concluded that "the legislative history and the definitions in section 6231(a) [make clear] that Congress did not wish the Court to decide all issues associated with a partnership in a single proceeding even if * * * [the Court] has the information available to do so." <u>Id.</u> at ___ (slip op. at 25).

<u>New Millennium Trading</u> stands for a simple proposition: The character of a defense to a penalty determines whether that defense is appropriate at the partnership level or the partner level. I argue only that an analogous proposition holds for a defense based on the statute of limitations.

---

[9](...continued)
6664(c)(1) (reasonable cause exception) subject to partnership-level determinations as to the applicability of section 6664(c)(2).

### 2. Slovacek v. United States

In Slovacek v. United States, 36 Fed. Cl. 250, 253-254 (1996), the taxpayers, in a partner-level proceeding, sought to disqualify a tax matters partner who had extended the partnership's period of limitations.  Success on that argument would have meant that, under section 6226(d)(1)(B), no partner was a party to the partnership-level proceeding.

The Court of Federal Claims first asked whether section 301.6231(a)(3)-1(b), Proced. & Admin. Regs. ("Factors that affect the determination of partnership items."), encompasses the "partnership's statute of limitations".  Id. at 255.  The Court of Federal Claims then stated:

> Determining whether * * * [the tax matters partner] extended the statute of limitations might be said to affect the amount, timing, and characterization of income, etc., (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner. Conversely, a statute of limitations issue applicable only to an individual partner involves questions of fact pertinent only to that partner, e.g., whether he extended the statute of limitations for his own return, see I.R.C. § 6229(b)(1)(A), or timely entered into a settlement agreement solely with respect to the partner's return, see I.R.C. § 6229(f), or participated in preparing a fraudulent partnership return, see I.R.C. § 6229(c)(1)(A).

Id.  The taxpayers lost because the Court of Federal Claims concluded that they made the first kind of argument:

> [W]hether a statute of limitations applicable to the partnership as a whole was waived so as to permit assessment of additional taxes against the partnership as a whole is an issue to be decided at the partnership

> level, since it affects all partners alike (to the
> extent of their proportionate share). * * *

Id.[10]

Petitioners, however, have made the second kind of argument. Their statute of limitations argument, which is not an argument under section 6226(d)(1)(B) that they are not parties, involves questions of fact pertinent only to the them; i.e., whether any computational adjustment for 2001 would be timely with respect to them individually. Thus, their argument is appropriate at the partner level.

D. Conclusion

The holding of no case supports the majority; moreover, my analysis of section 6226(d) is consistent with every case I have found and the majority cites.[11]

---

[10]In the end, however, the Court of Federal Claims did not rely on that analysis and held that, by signing an income tax settlement agreement, the taxpayers had waived "their legal right to a refund." Slovacek v. United States, 36 Fed. Cl. 250, 256 (1996).

[11]Judge Thornton cites Crowell v. Commissioner, 102 T.C. 683 (1994), and McConnell v. Commissioner, T.C. Memo. 2008-167, for the proposition that "a statute of limitations defense as pertains to a final notice of partnership adjustments should be prosecuted in the context of the partnership-level proceeding rather than in a partner-level proceeding." Concurring op. p. 44. I could not agree more. Yet, as I have argued supra in sec. II. of this separate opinion, the statute of limitations defense the Manroes present does not pertain to the FPAA.

## V.  The Concurring Opinion

Judge Thornton proposes three ways in which the Manroes' statute of limitations claim might present a partnership item (which would allow us to dispose of the claim at the partnership level, see sec. 6221).  The first way supports the majority's analysis of section 6226(d)(1).  The second two ways provide an alternative ground for considering the Manroes' claim.

### A.  Section 6226(d)(1) and the Flush-Language Sentence

Judge Thornton apparently believes that a partner's claim made pursuant to the flush-language sentence that he has no interest in the outcome of a partnership-level proceeding necessarily involves a partnership item.  Concurring op. p. 42. As indicated previously, the term "partnership item" is a term of art, defined in section 6231(a)(3) and section 301.6231(a)(3)-1, Proced. & Admin. Regs.  A partner's claim made pursuant to the flush-language sentence might involve a partnership item, especially if the claim is that the period of limitations has expired for all partners for all years so that it raises an affirmative defense to the FPAA.  See sec. 301.6231(a)(3)-1(b), Proced. & Admin. Regs. ("Factors that affect the determination of partnership items."); see also supra note 3; supra sec. IV.C.2. of this separate opinion (discussing the two kinds of statute of limitations arguments identified in Slovacek v. United States, supra).  The Manroes do not raise an affirmative defense to the

FPAA and do not disclaim an interest in this proceeding.  Judge Thornton has failed to show that their claim nonetheless involves a partnership item under section 6226(d)(1).

B.  Section 6501(c)(10) and Listed Transactions

Relying on section 6501(c)(10), Judge Thornton proposes two ways the Manroes' statute of limitations claim might present a partnership item.  Judge Thornton offers his analysis relying on section 6501(c)(10) as an alternative to the majority's analysis under section 6226(d)(1).  Section 6501(c)(10) extends the section 6501(a) period for assessing and collecting tax if a taxpayer fails to include on his return information required with respect to listed transactions.  Judge Thornton speculates that, because the partnership was involved in what is arguably a listed transaction, the question of whether that transaction is a listed transaction "could be considered a partnership item."  Concurring op. p. 43.  He further speculates that, "insofar as the partnership's failure to file a disclosure statement operates to extend the limitations period under section 6501(c)(10) for assessing any tax", the question of "[w]hether the limitations period remains open may also be considered a partnership item".  Concurring op. p. 43.

With respect to Judge Thornton's first conclusion, the factual inquiry necessary to determine whether a transaction is a listed transaction may indeed involve partnership items (e.g.,

partnership liabilities or the amount of a partner's contributions to the partnership, see sec. 301.6231(a)(3)-1(a)(1)(v), (4)(i), Proced. & Admin. Regs.), and the question itself may well present a partnership item.  Nonetheless, a finding that the transaction is a listed transaction is insufficient for a finding that section 6501(c)(10) has extended the section 6501(a) period of limitations for the Manroes' 2001 year.  To make that finding, we would also need to decide (1) the effective dates of sections 6501(c)(10) and 6707A and (2) the validity of section 1.6011-4T(a)(1), Temporary Income Tax Regs., 67 Fed. Reg. 41327 (June 18, 2002).  While those questions are purely legal, the answers are in this case irrelevant to whether the FPAA was timely (it was) and to whether the Manroes are parties (they are); the answers are pertinent only to whether, because of section 6501(c)(10), the section 6501(a) period of limitations applicable to the Manroes has been extended for their 2001 year.[12]  In a partnership-level proceeding, for a partner who does not deny he is a party thereto, a statute of limitations claim is not an affirmative defense.  See <u>supra</u> secs. II. and

_____

[12]Analogous questions would include whether they by agreement with the Commissioner extended the period of limitations for the assessment of computational adjustments pertaining only to their return, see sec. 6229(b)(1)(A), or entered into a settlement solely with respect their own return, see sec. 6229(f).  Those are questions that would be pertinent only to the Manroes and so would be properly raised only at the partner level.  See <u>supra</u> sec. IV.C.2. of this separate opinion.

III. of this separate opinion. Judge Thornton has failed to convince me that, nonetheless, that claim involves a partnership item within the meaning of section 301.6231(a)(3)-1, Proced. & Admin. Regs.

With respect to Judge Thornton's second conclusion, I am not convinced that the Manroes' statute of limitations claim is a partnership item because the partnership failed to attach a disclosure statement to its return. Section 1.6011-4T(a)(1), Temporary Income Tax Regs., supra, imposes a disclosure requirement on, among others, every individual and partnership participating directly or indirectly in a reportable transaction. If a partnership and some of its partners participate in a reportable transaction, then both the partnership and those partners must disclose. (That is, I assume, the situation we have here.) The temporary regulation, however, does not explain the effects of disclosure by the partnership on the partners, or vice versa. I would be hesitant without clarification of the regulation to state either (1) that, notwithstanding a partner's disclosure, a partnership's failure to disclose could extend the partner's period of limitations or (2) that the partnership's disclosure could cure a partner's failure to disclose. I believe that, in the situation described, the partner's disclosure should be both necessary and sufficient to overcome section 6501(c)(10). Thus, the partnership's disclosure seems irrelevant. Because the

partner's disclosure should always decide the issue, the issue does not present a partnership item.

Judge Thornton's listed transactions speculation raises interesting points. His alternative to the majority's analysis of section 6226(d)(1), however, is pertinent only to a narrow class of cases (i.e., those involving listed transactions). Moreover, like the majority, he is satisfied to decide important issues without any input from the parties. I would not do so.

VI. Effect of the Majority Opinion

I fear that an effect of the majority opinion is to transform a partnership-level proceeding into the exclusive venue for raising any statute of limitations defense. That is contrary to the purposes and logic of the unified audit and litigation procedures of Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402, 96 Stat. 648. TEFRA was intended to make certain that any question that affected partners in a partnership generally was answered once and for all. See, e.g., RJT Invs. X v. Commissioner, 491 F.3d 732, 737 (8th Cir. 2007), in which the Court of Appeals stated:

> TEFRA was intended, in relevant part, to prevent inconsistent and inequitable income tax treatment between various partners of the same partnership resulting from conflicting determinations of partnership level items in individual partner proceedings. Randell v. United States, 64 F.3d 101, 103-04 (3rd Cir. 1995) (describing the goals of TEFRA and the problems TEFRA was intended to address) * * *

TEFRA was also intended to make the administration of the tax laws more efficient.  See H. Conf. Rept. 97-760, at 600 (1982), 1982-2 C.B. 600, 662.

The majority's interpretation furthers neither of those goals; indeed, as discussed below, it may have unintended consequences.  I believe that the majority has erred because it has not considered the differences between an affirmative defense to an FPAA, a partner's claim that he is not a party to a partnership-level proceeding, and a partner's claim that section 6501(a) bars the collection of a particular computational adjustment.  While hanging its hat on language in section 6226(d)(1) dealing with claims of the second sort, the majority I believe has conflated claims of the first and third sort, treating a claim of the third sort as a proper affirmative defense at the partnership level.[13]  That misunderstanding of the statutory framework will almost certainly have adverse and surprising consequences.

Consider a case in which no partner plans to contest the merits of an FPAA or his status as a party, but each believes he has a partner-level defense, some relying on the statute of limitations, some on another defense.  I assume that if a partner with a statute of limitations defense fails to raise that defense at the partnership level, he will be deemed to have waived it.

_____

[13]See supra note 1.

In general, a party who fails to raise a defense when he has the opportunity to do so thereby waives the defense.  See, e.g., <u>Chimblo v. Commissioner</u>, 177 F.3d 119, 125 (2d Cir. 1999), affg. T.C. Memo. 1997-535, in which the Court of Appeals stated:

> As a general matter, the statute of limitations is an affirmative defense that must be pleaded; it is not jurisdictional.  <u>See</u> <u>Columbia Bldg., Ltd. v. Commissioner</u>, 98 T.C. 607, 611 * * * (1992).  It follows that such a defense may be waived by a party who fails to raise it at the appropriate time.

The majority opinion seems to stand for the proposition that, although generally a partner must preserve his partner-specific defenses for a partner-level proceeding, he may--and so must--mount his statute of limitations defense at the partnership level, even if he disputes neither the FPAA nor that he has an interest in the outcome of the partnership-level proceeding.  I doubt that Congress set such a perilous trap for the unwary.

VII.  <u>Conclusion</u>

In a partnership-level proceeding, the Court has authority to decide (1) partnership items (and related penalties, additions to tax and the like), see sec. 6221, (2) affirmative defenses, see Rule 39, and (3) whether a partner is not a party because he has no interest in the outcome of the proceeding, see sec. 6226(c) and (d).  In a partnership-level proceeding, if a partner is a party thereto, the question of whether the statute of limitations bars the subsequent assessment of tax for a given year is neither a partnership item nor an affirmative defense to

the FPAA. The majority and Judge Thornton fail to convince me otherwise and so fail to convince me that the Court has authority in this proceeding to consider that question.[14]

Consider the problem another way: Respondent has not yet sought to collect any tax from any partner with respect to the adjustments in the FPAA. Indeed, he cannot yet do so. See sec. 6225. Thus, to answer the question these motions present is to answer a hypothetical question. Generally, when a court answers a question unnecessarily, its opinion is at best advisory.

I would deny both motions as at this time beyond the authority of the Court. Therefore, I respectfully dissent.

FOLEY and HOLMES, JJ., agree with this dissenting opinion.

---

[14]Judge Thornton suggests: "It is not such a great leap that the Court should also consider * * * [a partner's assertions of a limitations bar] where a partner asserts the limitations bar with respect to fewer than all affected years." Concurring op. p. 45. It is a great leap, however, if we do not have authority to do so. As we stated in Blonien v. Commissioner, 118 T.C. 541, 550 (2002) (quoting Saso v. Commissioner, 93 T.C. 730, 734-735 (1989)): "'When a jurisdictional issue is raised, as well as a statute of limitations issue, we must first decide whether we have jurisdiction in the case before considering the statute of limitations defense.'" As we further stated, citing the Supreme Court as authority: "We cannot avoid the jurisdictional issue by assuming hypothetical jurisdiction and disposing of the case on the merits." Id. at 551 (citing Steel Co. v. Citizens for a Better Envt., 523 U.S. 83, 94 (1998)).